**SAXENA WHITE P.A.**
MAYA SAXENA
(msaxena@saxenawhite.com)
JOSEPH E. WHITE, III
(white@saxenawhite.com)
LESTER R. HOOKER (Bar No. 241590)
(lhooker@saxenawhite.com)
150 East Palmetto Park Road
Suite 600
Boca Raton, Florida 33432
Tel:    (561) 394-3399
Fax:    (561) 394-3382

-and-

Steven B. Singer
(ssinger@saxenawhite.com)
10 Bank St.
8th Floor
White Plains, New York 10606
Tel:    (914) 437-8551
Fax:    (888) 631-3611

*Counsel for Plaintiff and the Proposed Class*

**BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP**
DAVID R. STICKNEY (Bar No. 188574)
(davids@blbglaw.com)
12481 High Bluff Drive
Suite 300
San Diego, CA 92130
Tel: (858) 793-0070
Fax: (858) 793-0323

-and-

AVI JOSEFSON
(avi@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

*Local Counsel for Plaintiff and the Proposed
Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> NEVRO CORP., RAMI ELGHANDOUR and ANDREW GALLIGAN, <br><br> Defendants. | Case: <br><br> CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS <br><br> JURY TRIAL DEMANDED |

CLASS ACTION COMPLAINT

Plaintiff Oklahoma Police Pension and Retirement System ("Plaintiff"), by and through its attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.  Plaintiff's information and belief is based upon, among other things, its counsel's investigation, which includes without limitation: (a) review and analysis of public filings made by Nevro Corp. ("Nevro" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by Defendants and other related non-parties; (c) review of news articles, shareholder communications, conference call transcripts, and postings on Nevro's website concerning the Company's public statements; and (d) review of other publicly available information concerning Nevro and the Individual Defendants.

## NATURE OF THE ACTION

1.     This is a class action on behalf of persons and entities that acquired Nevro common stock between January 8, 2018 and July 12, 2018, inclusive (the "Class Period"), against Defendants Nevro, its Chief Executive Officer, Rami Elghandour ("Elghandour"), and its Chief Financial Officer Andrew Galligan ("Galligan") (collectively, "Defendants"), seeking to pursue remedies under the Securities Exchange Act of 1934, 15 U.S.C. § 78a et. seq. (the "Exchange Act").

2.     Nevro, headquartered in Redwood City, California, designs, develops and manufactures medical device treatments for patients suffering from debilitating chronic pain. The Company's principal products and revenue-drivers are its HF10 therapies delivered by its Senza I and Senza II spinal cord stimulation ("SCS") systems, which Defendants regularly touted as "novel," "proprietary" and the lifeline of its business and sales growth.

3.     On April 27, 2018, Nevro's stock price began to decline after it was revealed that Boston Scientific Corp. ("Boston Scientific") had filed an action against Nevro asserting claims of patent infringement, theft of trade secrets, and tortious interference with contract alleging that,

as early as 2009, Nevro had been recruiting and hiring dozens of former Boston Scientific employees and was using trade secrets contained in more than 34,000 documents stolen from Boston Scientific by those former employees to develop and improve Nevro's Senza I and Senza II SCS systems. On this news, Nevro's share price declined $1.46 per share, wiping out $44 million of the Company's market capitalization in one trading day.

4.    Just a week later, on May 7, 2018, the Company stunned investors when it reported first quarter 2018 financial results that fell drastically short of estimates.  The shortfall was blamed in large part on a 31% increase in quarterly operating expenses, driven primarily by legal expenses associated with the Company's patent infringement litigation with Boston Scientific.  On this news, Nevro's share price plummeted $14.67 per share, or 16%, wiping out another $450 million in the Company's market capitalization.

5.    On July 2, 2018, Morgan Stanley & Co analysts downgraded the Company's stock to "Equal Weight," explaining that Nevro's patent litigation had become a "key risk" and that the Company's claims of "clinical superiority" of its treatments were not to be believed as competitors had gained traction and blunted Nevro's share gains. On this news, Nevro's stock price dropped another $6.62 per share, or 8.29%, wiping out $200 million in market capitalization.

6.    Then, on July 10, 2018, multiple analysts reported on a tentative ruling issued by Judge Vincent Chhabria of the Northern District of California on the parties' cross-motions for summary judgment in Nevro's ongoing patent litigation against Boston Scientific.  The tentative ruling invalidated at least five of the patents related to Nevro's purportedly "proprietary" HF10 therapy and Senza systems.  As a result, analysts, including Northland Securities, downgraded Nevro, citing the Company's patent litigation concerns and cautioning investors to pay closer attention to the ongoing litigation because the tentative ruling, "if finalized, could require a recalibration vis-à-vis Nevro's hold" on the space.  On this news, Nevro's stock price declined $11.43 per share, or 15%, wiping out another $342 million in market capitalization.

7. Finally, On July 13, 2018, prior to the market opening, Nevro announced that the Company had "terminate[d] James Alecxih's, Vice President Worldwide Sales, employment with the Company." On this news, the stock price fell another $10.27 per share, or 15%, wiping out $309 million in market capitalization.

8. Thus, in less than three months, as the Company's stock dropped precipitously, revelations of Defendants' fraudulent conduct wiped out nearly half, or $1.345 billion, of Nevro's market capitalization.

9. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.   Specifically, Defendants failed to disclose: (1) that Nevro had engaged in a fraudulent scheme by using protected confidential and proprietary trade secrets and stolen documents from its competitors to develop and enhance the Company's Senza I and Senza II systems; (2) that as a result, the Company's Senza I and Senza II systems were not "novel" or "proprietary;" (3) that these practices caused the Company to be vulnerable to increased litigation expenses and adverse legal and regulatory action; (4) that, as a result, Nevro's U.S. sales growth was not sustainable; and (5) that, as a result of the foregoing, Defendants' statements about Nevro's business, operations, and prospects, were materially false and/or misleading and/or lacked a reasonable basis.

10. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

CLASS ACTION COMPLAINT

3

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

13.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  In addition, the Company's principal place of business is located in this District at 1800 Bridge Parkway, Redwood City, California, 94065.

14.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## **PARTIES**

15.     Plaintiff Oklahoma Police Pension and Retirement System, as set forth in the accompanying certification, incorporated by reference herein, purchased Nevro common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

16.     Defendant Nevro Corp. is a corporation organized under the laws of the State of Delaware and maintains its principal executive offices at 1800 Bridge Parkway, Redwood City, California, 94065. Redwood City, California.  Nevro's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "NVRO."

17.     Defendant Rami Elghandour ("Elghandour") was the CEO of Nevro at all relevant times.

18.     Defendant Andrew Galligan ("Galligan") was the CFO of Nevro at all relevant times.

19.     Defendants Elghandour and Galligan (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of Nevro's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pled herein.

## SUBSTANTIVE ALLEGATIONS

### Background

20.     Nevro develops and manufactures medical device treatment for patients suffering from chronic pain.  The Company's principal products and revenue-drivers are its Senza I and Senza II spinal cord stimulation systems.

21.     The Company describes Senza I as a neuromodulation device designed to deliver electrical stimulation to spinal cord nerves for the treatment of chronic intractable pain. The Senza I System delivers stimulation using percutaneous leads and a rechargeable, implantable pulse generator ("IPG"). The percutaneous leads are implanted within the spinal column and deliver stimulation to nerves through electrodes located on the back of the leads.

22.     Nevro launched Senza I commercially in the United States in May 2015 after receiving approval from the U.S. Food and Drug Administration ("FDA").  In January 2018, Nevro received FDA approval for the Company's next generation Senza II system, which provides the same treatment as Senza I but includes a next-generation IPG.

23.     Nevro's Senza I and Senza II SCS systems deliver to patients what Nevro calls its HF10 therapy.  According to the Company, "compared to traditional SCS therapy which

typically operates at 50 Hz to 60 Hz, HF10 therapy delivers spinal cord stimulation at a lower

amplitude and a higher frequency waveform of 10,000 Hz and relies on consistent anatomical

placement of the stimulation leads across patients, thus reducing procedure variability relative to

traditional SCS therapy."

24.    In November 2016, Nevro filed a lawsuit for patent infringement against Boston

Scientific in the United States District Court for the Northern District of California alleging that

Boston Scientific was infringing Nevro's patents covering inventions related to its HF10 therapy

and Senza I system.  According to the Company's 2016 Annual Report, filed on Form 10-K with

the SEC on February 23, 2017, Nevro stated that:

> We believe we have built competitive advantages through our proprietary
> technology, clinical evidence base, strong track record of execution with over
> 15,000 patients implanted with Senza, extensive intellectual property and a
> proven management team with substantial neuromodulation experience. With the
> well-demonstrated superior efficacy of our HF10 therapy, we aim to continue to
> drive adoption and penetration in the U.S. market, which represents the largest
> opportunity in SCS, and expand patient access to HF10 therapy by investing in
> the development of evidence for new indications such as chronic upper limb and
> neck pain, painful neuropathies and non-surgical refractory back pain.

### Defendants Issued Materially False and Misleading Statements and Omissions During the Class Period

25.    The Class Period begins on January 8, 2018, when Nevro issued a press release,

filed with the SEC attached to Form 8-K that was signed by Defendant Galligan, announcing its

preliminary unaudited Fourth Quarter and Fiscal Year 2017 financial results.   In addition to

reporting fourth quarter 2017 revenue to be in the range of $97.4 to $97.9 million and unaudited

full year 2017 revenue in the range of $326.1 to $326.6 million, the 8-K stated:

> Nevro has developed and commercialized the SENZA® spinal cord stimulation
> (SCS) system, an evidence-based, non-pharmacologic neuromodulation platform
> for the treatment of chronic pain. The SENZA® system is the only SCS system
> that delivers Nevro's *proprietary* HF10™ therapy.

26.    On February 22, 2018, the Company filed its Annual Report on SEC Form 10-K

(the "2017 10-K").  The 2017 10-K was signed by Defendants Elghandour and Galligan.  The

CLASS ACTION COMPLAINT

6

2017 10-K touted the proprietary nature of Nevro's chronic pain therapies as delivered by its

Senza I system:

> We are a global medical device company focused on providing innovative products that improve the quality of life of patients suffering from chronic pain. _We have developed and commercialized the Senza® spinal cord stimulation (SCS) system, an evidence-based neuromodulation platform for the treatment of chronic pain. Our proprietary paresthesia-free HF10^TM therapy, delivered by our Senza system, was demonstrated in our SENZA-RCT study to be superior to traditional SCS therapy with it being nearly twice as successful in treating back pain and 1.5 times as successful in treating leg pain when compared to traditional SCS therapy._ Comparatively, traditional SCS therapy has limited efficacy in treating back pain and is used primarily for treating leg pain, limiting its market adoption. Our SENZA-RCT study, along with our European studies, represents what we believe is the most robust body of clinical evidence for any SCS therapy. We believe the superiority of HF10 therapy over traditional SCS therapies will allow us to capitalize on and expand the approximately $2.0 billion existing global SCS market by treating both back and leg pain without paresthesia.

27.     The 2017 10-K further assured investors that the Company's growth strategy

relied heavily on sales of the Senza system in the United States:

> **Invest in research and development to drive innovation:** _We are extending our novel and proprietary technologies into a series of product enhancements with the goal of improving the treatment of chronic pain. Product enhancements have recently included a next-generation IPG and enhanced MRI capability, both of which were approved in Europe in 2017, with the next-generation IPG, or Senza II, gaining approval by the FDA in January 2018._ Further, we have commercially launched our surgical leads, marketed as the Surpass surgical lead, which we believe will give access to approximately 30% of the U.S. SCS market that we previously did not address fully without the surgical lead. _We also expect to continue developing enhancements to Senza to further increase performance and introduce new benefits including next generation IPGs and enhanced MRI capabilities. We believe that further product enhancements if and when completed will drive continued adoption of our technology platform and further validate the advantages and benefits of our HF10 therapy._

> **Scale our business to achieve cost and production efficiencies:** We plan to improve the efficiency of our third-party manufacturing processes, which we believe will lower our per unit manufacturing cost. _We expect to continue to scale our manufacturing operations as we expand Senza sales volumes in the United States._

28.     The 2017 10-K further stated:

We believe we have built competitive advantages through _our proprietary technology_, clinical evidence base, strong track record of execution with over 28,000 patients implanted with Senza, extensive intellectual property and a proven management team with substantial neuromodulation experience. With the

CLASS ACTION COMPLAINT

7

well-demonstrated superior efficacy of our HF10 therapy, we aim to continue to drive adoption and penetration in the U.S. market, which represents the largest opportunity in SCS, and expand patient access to HF10 therapy by investing in the development of evidence for new indications such as chronic upper limb and neck pain, painful neuropathies and non-surgical refractory back pain.

29.     During the Company's earnings call with investors on February 22, 2018, Defendant Elghandour touted the Company's growing sales revenue

Worldwide revenue for the fourth quarter was 98 million, an increase of 39% as reported compared to the same period of the prior year. U.S. revenue for the quarter was 81.1 million, an increase of 45%. Fourth quarter international revenue was 16.9 million, representing an increase of 10% on a constant currency basis. *These results are driven by continued adoption and demand for HF10 globally and consistent execution by our sales team.*

30.     Defendant Elghandour further continued to tout the Company's continued success with its Senza systems as Defendants reaffirmed Nevro's full year 2018 guidance.

Our R&D and regulatory team secured three key approvals; our Surpass surgical lead, Senza II CE Mark and Senza I Full Body MRI CE Mark. *Our clinical team continued to advance the platform applicability of HF10 with outstanding research demonstrating the long-term potential for our therapy in a number of new pain areas.*

31.     As a result of Defendants' glowing statements to the public, Nevro stock gained $4.13 per share, from a close of $79.65 on February 22, 2018 to a close of $83.78 on February 23, 2018, increasing the Company's market capitalization by $124 million.  Over the next several weeks, Nevro's stock price continued to increase, trading in the low $90s by mid-April 2018.

32.     The above statements identified in ¶¶25-30 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants failed to disclose: (1) that Nevro had engaged in a fraudulent scheme by using protected confidential and proprietary trade secrets and stolen documents to develop and enhance Nevro's Senza I and Senza II systems; (2) that as a result, the Company's Senza I and Senza II systems were not "novel" or "proprietary;" (3) that these practices caused the Company to be vulnerable to increased litigation expenses and adverse legal and regulatory action; (4) that,

1  as a result, Nevro's U.S. sales growth was not sustainable; and (5) that, as a result of the

2  foregoing, Defendants' statements about Nevro's business, operations, and prospects, were

3  materially false and/or misleading and/or lacked a reasonable basis.

4  **The Truth Emerges**

5      33.    On April 27, 2018, the truth began to emerge when it was revealed that Boston

6  Scientific had filed its own action against Nevro asserting claims of patent infringement, theft of

7  trade secrets, and tortious interference with contract.  In addition to alleging that Nevro's Senza

8  systems had violated no less than nine of Boston Scientific's U.S. patents, the complaint detailed

9  a long-running fraudulent scheme by Nevro <u>dating back to at least 2009</u>, whereby Nevro actively

10 recruited and hired dozens of former Boston Scientific employees, and then stole Boston

11 Scientific's confidential, proprietary trade secrets to develop Nevro's Senza I and Senza II

12 systems, with the full knowledge and awareness of Defendants.

13     34.    As Boston Scientific's Complaint alleges, Nevro hired dozens of former Boston

14 Scientific employees who were intimately involved in Boston Scientific's development of its

15 own SCS technology.

16     35.    Among those former employees was Jim Thacker ("Thacker"), Nevro's Director

17 of Field Engineering, who worked at Boston Scientific from 2000 to 2006 as Manager of Field

18 Clinical Engineering. As a condition of his employment with Boston Scientific, Thacker signed a

19 confidentiality agreement that required him to keep confidential during the term of his

20 employment and thereafter, all trade secrets developed or learned during the course of his

21 employment.  When Thacker left Boston Scientific voluntarily in 2006, he represented to the

22 Company that he did not have in his possession any Boston-Scientific owned property, including

23 proprietary or trade secret documents.

24     36.    However, unbeknownst to Boston Scientific or Nevro investors, Thacker had

25 taken more than 34,000 Boston Scientific documents with him, including five of his own

26 laboratory notebooks detailing the work performed on Boston Scientific's Precision SCS system,

27

Boston Scientific-owned thumb drives, actual Precision SCS demonstration devices, lead manuals, and media kits all related to Boston Scientific's SCS system.

37.    Thacker sent to Nevro employees in which Thacker attached Boston Scientific documents that were explicitly and undeniably marked "Confidential" and "Proprietary."  As the Complaint explains:

> _Nevro's possession of Boston Scientific's internal clinical investigation protocol for its Precision™ SCS product would have been of value to Nevro, who during the relevant time period was developing its own SCS system, and conducting its own clinical investigations. Since Nevro had never developed an SCS product before, the Stimulus Confirmatory Study disclosed by Mr. Thacker provided Nevro with a necessary tool to develop its own clinical investigation protocol_....Nevro has used the information provided by Mr. Thacker in connection with its business activities, including in its research and development, design, clinical investigation, and testing of the Senza Systems.

38.    On this news, Nevro's share price declined $1.46 per share, from a close of $90.82 per share on April 27, 2018 to a close of $89.36 per share on April 30, 2018 – wiping out $44 million in the Company's market capitalization in one trading day.

39.    Then, just one week later, on May 7, 2018, after the close of trading, Defendants stunned the market when they announced Nevro's first quarter 2018 financial results in a press release that was filed as an attachment to Form 8-K with the SEC.  Although the Company reported a 33% increase in U.S. revenue over the same period the prior year, the Company also disclosed that its operating expenses had increased by almost the same margin, driven primarily by "legal expenses associated with intellectual property litigation" with Boston Scientific.

40.    During the Company's earnings call with analysts that evening, Defendant Elghandour explained that:

> Operating expenses for the first quarter of 2018 were $77.7 million, an increase of 31% compared to the first quarter of 2017. The increase in operating expenses was driven primarily by increased headcount and related personnel costs, _as well as legal expenses associated with the Boston Scientific intellectual property litigations._
>
> Legal expense in connection with those litigations was $8.6 million for the quarter, as compared to $2.4 million in the same quarter of last year. Net loss from operations for the period was $15.7 million compared to $13.1 million for the first quarter of 2017. Excluding the effect of the IP litigation spend in each

period. We saw $3.5 million decrease or 33% improvement and net operating loss this quarter as compared to Q1 of 2017.

41.    On this news, Nevro's share price plummeted $14.67 per share, or 16%, from a close of $92.26 per share on May 7, 2018 to a close of $77.59 per share on May 8, 2018, on heavy trading volume of more than 4 million shares – wiping out another $450 million in market capitalization.

42.    On July 2, 2018, Nevro investors were shocked again when Morgan Stanley & Co. downgraded Nevro to "Equal Weight" explaining that the Company was facing a "key risk" with its patent litigation, and questioning its ongoing claims of "superiority":

> Nevro's commercial message around clinically superiority has not resonated as well since those initial concerns as competitors have gained traction and blunted Nevro's share gains since NANS 2017. *Our channel diligence has shifted in recent months as doctors have highlighted lower real-world efficacy vs SENZA-RCT, the subjectivity of pain score reductions, and durable relief with alternate therapies (particularly Medtronic's Intellis/Evolve workflow), all suggesting the commercial path from here is likely to get harder for Nevro.*

43.    On this news, Nevro's stock price dropped another $6.62 per share, or 8.29%, from a close of $79.85 per share on June 29, 2018 to a close of $73.23 per share on July 2, 2018, on high trading volume of more than 2 million shares, wiping out $200 million in market capitalization.

44.    Then, on July 5, 2018, Judge Vincent Chhabria of the Northern District of California issued a tentative ruling on cross-motions for summary judgment in Nevro's own patent infringement action against Boston Scientific. Judge Chhabria's tentative ruling threatened to end Nevro's case by invalidating the lion's share of Nevro's patents. The tentative ruling was reported to the market on July 10, 2018, when analysts from several investment firms, including Canaccord Genuity, Wells Fargo Securities, LLC, Morgan Stanley & Co., JMP Securities and Northland Securities, Inc. all issued reports describing the ruling.

45.    Morgan Stanley explained in its July 10, 2018 analyst note that the "draft ruling on the Nevro/Boston IP litigation is likely pressuring shares this morning. The IP debate was a component of our recent downgrade."   Following suit, Northland Securities issued its own

downgrade of Nevro stock, citing the Company's patent litigation and cautioning investors to pay closer attention to the ongoing litigation because the tentative ruling, "if finalized could require a recalibration vis-à-vis Nevro's hold" on the space.

46.    On this news, Nevro's stock price declined $11.43 per share, or 15%, from a close of $75.47 per share on July 9, 2018 to $64.04 per share on July 10, 2018, again on exceptionally high trading volume of nearly 4 million shares, wiping out $342 million in market capitalization.

47.    Finally, on July 13, 2018, prior to market open, Nevro filed a Form 8-K with the SEC announcing without explanation or warning, that the Company had "determined to terminate James Alecxih's, Vice President Worldwide Sales, employment with the Company."

48.    On this news, the stock price fell another $10.27 per share, or 15%, from a close of $68.04 on July 12, 2018, to a close of $57.77 on July 13, 2018 on trading volume of 6.5 million shares, wiping out an additional $309 million in market capitalization.

## CLASS ACTION ALLEGATIONS

49.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired Nevro common stock between January 8, 2018 and July 12, 2018, inclusive, and who were damaged thereby (the "Class").  Excluded from the  Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

50.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Nevro's common stock actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Nevro shares were traded publicly during the Class Period on the NYSE.  During the Class Period, Nevro had over 30

million shares of common stock outstanding. Record owners and other members of the Class may be identified from records maintained by Nevro or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

51.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

52.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

53.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a.  whether the federal securities laws were violated by Defendants' acts as alleged herein;

    b.  whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Nevro; and

    c.  to what extent the members of the Class have sustained damages and the proper measure of damages.

54.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**UNDISCLOSED ADVERSE FACTS**

55.    The market for Nevro's common stock was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Nevro common stock traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Nevro's common stock relying upon the integrity of the market price of the Company's common stock and market information relating to Nevro, and have been damaged thereby.

56.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Nevro's common stock, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Nevro's business, operations, and prospects as alleged herein.

57.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Nevro's business, practices and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its business, thus causing the Company's common stock to be overvalued and artificially inflated or maintained at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

**LOSS CAUSATION**

58.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

59.    During the Class Period, Plaintiff and the Class purchased Nevro's common stock at artificially inflated prices and were damaged thereby.  The price of the Company's common stock significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

**APPLICABILITY OF PRESUMPTION OF RELIANCE**
**(FRAUD-ON-THE-MARKET DOCTRINE)**

60.    The market for Nevro's common stock was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Nevro's common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired the Company's common stock relying upon the integrity of the market price of Nevro's common stock and market information relating to Nevro, and have been damaged thereby.

61.    During the Class Period, the artificial inflation of Nevro's common stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Nevro's business, operations, and results. These material misstatements and/or omissions created an unrealistically positive assessment of Nevro and its business, operations, and results, thus causing the price of the Company's common stock to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at such artificially inflated prices, and each of them has been damaged as a result.

CLASS ACTION COMPLAINT

62.    At all relevant times, the market for Nevro's common stock was an efficient market for the following reasons, among others:

    a.  Nevro was listed and actively traded on the NYSE, a highly efficient and automated market;

    b.  As a regulated issuer, Nevro filed periodic public reports with the SEC and/or the NYSE;

    c.  Nevro regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

    d.  Nevro was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

63.    As a result of the foregoing, the market for Nevro's common stock promptly digested current information regarding Nevro from all publicly available sources and reflected such information in Nevro's stock price. Under these circumstances, all purchasers of Nevro's stock during the Class Period suffered similar injury through their purchase of Nevro's stock at artificially inflated prices and a presumption of reliance applies.

64.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations, sales growth and prospects—information that Defendants were obligated to disclose—positive proof of reliance is

not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

65.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Nevro who knew that the statement was false when made.

### FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

66.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

67.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Nevro's common stock at artificially inflated and/or

CLASS ACTION COMPLAINT

17

maintained prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

68.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Nevro's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

69.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Nevro's sales growth, business practices and prospects, as specified herein. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Nevro's value and performance and continued growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Nevro and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

70.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's

1    management team or had control thereof; (ii) each of these defendants, by virtue of their

2    responsibilities and activities as a senior officer and/or director of the Company, was privy to and

3    participated in the creation, development and reporting of the Company's internal budgets, plans,

4    projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and

5    familiarity with the other defendants and was advised of, and had access to, other members of the

6    Company's management team, internal reports and other data and information about the

7    Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants

8    was aware of the Company's dissemination of information to the investing public which they

9    knew and/or recklessly disregarded was materially false and misleading.

10        71.    Defendants had actual knowledge of the misrepresentations and/or omissions of

11   material facts set forth herein, or acted with reckless disregard for the truth in that they failed to

12   ascertain and to disclose such facts, even though such facts were available to them. Such

13   Defendants' material misrepresentations and/or omissions were done knowingly or recklessly

14   and for the purpose and effect of concealing Nevro's business practices and prospects from the

15   investing public and supporting the artificially inflated and/or maintained price of its stock. As

16   demonstrated by Defendants' overstatements and/or misstatements of the Company's business,

17   operations, practices, and prospects throughout the Class Period, Defendants, if they did not have

18   actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to

19   obtain such knowledge by deliberately refraining from taking those steps necessary to discover

20   whether those statements were false or misleading.

21        72.    As a result of the dissemination of the materially false and/or misleading

22   information and/or failure to disclose material facts, as set forth above, the market price of

23   Nevro's common stock was artificially inflated during the Class Period. In ignorance of the fact

24   that market prices of the Company's common stock were artificially inflated, and relying directly

25   or indirectly on the false and misleading statements made by Defendants, or upon the integrity of

26   the market in which the stock trades, and/or in the absence of material adverse information that

27

was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Nevro's common stock during the Class Period at artificially high prices and were damaged thereby.

73.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Nevro was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Nevro common stock, or, if they had acquired such stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

74.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

75.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

76.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

77.    The Individual Defendants acted as controlling persons of Nevro within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which

CLASS ACTION COMPLAINT

20

1    Plaintiff contends are false and misleading. Individual Defendants were provided with or had

2    unlimited access to copies of the Company's reports, press releases, public filings, and other

3    statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements

4    were issued and had the ability to prevent the issuance of the statements or cause the statements

5    to be corrected.

6       78.    In particular, the Individual Defendants had direct and supervisory involvement in

7    the day-to-day operations of the Company and, therefore, had the power to control or influence

8    the particular transactions giving rise to the securities violations as alleged herein, and exercised

9    the same.

10      79.    As set forth above, Nevro and the Individual Defendants each violated Section

11   10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their

12   position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the

13   Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and

14   other members of the Class suffered damages in connection with their purchases of the

15   Company's common stock during the Class Period.

16                                   **PRAYER FOR RELIEF**

17      WHEREFORE, Plaintiff prays for relief and judgment, as follows:

18       a.    Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the

19   Federal Rules of Civil Procedure on behalf of the Class defined herein;

20       b.    Awarding Plaintiff and the other members of the Class damages in an amount

21   which may be proven at trial, together with interest thereon;

22       c.    Awarding Plaintiff and the other members of the Class pre-judgment and post-

23   judgment interest, as well as their reasonable attorneys' and experts' witness fees and other

24   costs; and

25       d.    Awarding such other relief as this Court deems appropriate.

26

27

CLASS ACTION COMPLAINT

21

1

## <u>JURY TRIAL DEMANDED</u>

2

Plaintiff hereby demands a trial by jury.

3

DATED:  August 23, 2018          **BERNSTEIN LITOWITZ BERGER**
4                                 **& GROSSMANN LLP**

5
                                 <u>/s/David R. Stickney</u>
6                                 DAVID R. STICKNEY (Bar No. 188574)
                                 (davids@blbglaw.com)
7                                 12481 High Bluff Drive
                                 Suite 300
8                                 San Diego, CA 92130
                                 Tel: (858) 793-0070
9                                 Fax: (858) 793-0323

10                                -and-

11                                AVI JOSEFSON
                                 (avi@blbglaw.com)
12                                1251 Avenue of the Americas
                                 New York, NY 10020
13                                Tel: (212) 554-1400
                                 Fax: (212) 554-1444

14
                                 *Local Counsel for Plaintiff and the Proposed Class*
15
                                 **SAXENA WHITE PA**
16                                MAYA SAXENA
                                 (msaxena@saxenawhite.com)
17                                JOSEPH E. WHITE, III
                                 (white@saxenawhite.com)
18                                LESTER R. HOOKER (Bar No. 241590)
                                 (lhooker@saxenawhite.com)
19                                150 East Palmetto Park Road
                                 Suite 600
20                                Boca Raton, Florida 33432
                                 Tel:    (561) 394-3399
21                                Fax:    (561) 394-3382

22                                -and-

23                                Steven B. Singer
                                 (ssinger@saxenawhite.com)
24                                10 Bank St.
                                 8th Floor
25                                White Plains, New York 10606
                                 Tel:    (914) 437-8551
26                                Fax:    (888) 631-3611

27                                *Counsel for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT

22