PAGES 1 - 12

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE VINCE CHHABRIA

OKLAHOMA POLICE PENSION AND      )
RETIREMENT SYSTEM, INDIVIDUALLY  )
AND ON BEHALF OF ALL OTHERS      )
SIMILARLY SITUATED,              )
                                 )
            PLAINTIFF,           )
                                 )
  VS.                            ) NO. 18-CCV-5181 VC
                                 )
NEVRO CORP., RAMI ELGHANDOUR AND )
ANDREW GALLIGAN,                 )
                                 ) SAN FRANCISCO, CALIFORNIA
            DEFENDANT.           ) THURSDAY
                                 ) DECEMBER 20, 2018
_____)

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

**RECORDING 10:06 A.M. - 10:22 A.M.**

**APPEARANCES:**

**FOR PLAINTIFF**              SAXENA WHITE P.A.
                               150 EAST PALMETTO PARK ROAD
                               SUITE 600
                               BOCA RATON, FLORIDA 33432
                    **BY: KENNETH M. REHNS, ESQUIRE**


**FOR DEFENDANTS**             LATHAM & WATKINS LLP
                               140 SCOTT DRIVE
                               MENLO PARK, CA 94025
                    **BY: MATTHEW RAWLINSON, ESQUIRE**


                               LATHAM & WATKINS LLP
                               12670 HIGH BLUFF DRIVE
                               SAN DIEGO, CALIFORNIA 92130
                    **BY: GRANT STROTHER, ESQUIRE**

*TRANSCRIBED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR*
                  *RETIRED OFFICIAL COURT REPORTER, USDC*

```
 1   THURSDAY, DECEMBER 20, 2018                    10:06 A.M.
 2   (TRANSCRIBER'S NOTE: DUE AT TIMES TO COUNSELS' FAILURE TO
 3   IDENTIFY THEMSELVES WHEN SPEAKING, CERTAIN SPEAKER
 4   ATTRIBUTIONS ARE BASED ON EDUCATED GUESS.)
 5                          ---oOo---
 6                         PROCEEDINGS
 7         THE CLERK:  CV-5181, OKLAHOMA POLICE PENSION AND
 8   RETIREMENT SYSTEM VERSUS NEVRO CORPORATION, ET AL.
 9         COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE
10   RECORD.
11         MR. REHNS:  GOOD MORNING, YOUR HONOR.  KENNETH REHNS,
12   SAXENA WHITE, P.A. FOR THE PLAINTIFF, OKLAHOMA POLICE.
13         THE COURT:  GOOD MORNING.
14         MR. RAWLINSON:  MATT RAWLINSON OF LATHAM & WATKINS
15   FOR THE DEFENDANTS, AND WITH ME IS MY COLLEAGUE GRANT STROTHER.
16         THE COURT:  GOOD MORNING.  OKAY.  LET ME PULL THIS
17   ONE UP.
18         I HAVE -- I'M -- I WENT THROUGH THE COMPLAINT, AND I
19   CAN'T -- I CAN'T TELL YOU THAT I READ IT CAREFULLY.  I KIND OF
20   FLIPPED -- IT'S MORE LIKE I FLIPPED THROUGH IT.  BUT I HAVE TO
21   TELL YOU THAT I -- AFTER FLIPPING THROUGH IT, I FOUND MYSELF
22   REALLY SCRATCHING MY HEAD.  AND I REALIZE THIS IS JUST A MOTION
23   TO APPOINT LEAD PLAINTIFF AND LEAD COUNSEL, AND WE'LL -- AND,
24   YOU KNOW, WE WILL, YOU KNOW, HAVE A CHANCE TO DISCUSS THIS MORE
25   IN RESPONSE TO THE MOTION TO DISMISS.
```

BUT I JUST -- SO MY FIRST QUESTION FOR YOU IS:
THERE'S A LOT OF TALK ABOUT THE PATENT DISPUTE BETWEEN NEVRO
AND BOSTON SCIENTIFIC THAT WAS ADJUDICATED IN THIS COURT
EARLIER THIS YEAR, BUT I HAD A VERY HARD TIME UNDERSTANDING HOW
THAT DISPUTE AND HOW THAT RULING RELATES TO YOUR SECURITIES
FRAUD CLAIM.  SO CAN YOU EXPLAIN THAT TO ME?

MR. REHNS:  ABSOLUTELY, YOUR HONOR.  WE ALLEGE THAT
DEFENDANTS MISLED THE CLASS AS TO THEIR COMPETITIVE ADVANTAGE,
THEIR MARKET SHARE, AND THE PROPRIETARY NATURE OF THEIR
PRODUCT, WHICH, IN PART, WAS DISCLOSED --

THE COURT:  SO WHAT DID THEY SAY ABOUT IT THAT WAS
NOT TRUE?

MR. REHNS:  I THINK MOST RELEVANT TO BE THAT THEIR
MARKET SHARE AND THAT THEIR -- THEIR REVENUE WAS DRIVEN BY THIS
PROPRIETARY PRODUCT AND WOULD CONTINUE TO BE AS A SUPERIOR
PRODUCT IN THE MARKET.

THE COURT:  MARKET SHARE WHERE?

MR. REHNS:  IN THE U.S. AND INTERNATIONALLY.

THE COURT:  OKAY.

MR. REHNS:  AND --

THE COURT:  AND WHAT ABOUT THAT WAS INCORRECT?

MR. REHNS:  WE ALLEGE IN THE COMPLAINT THAT IT WAS --
THAT THAT WAS INCORRECT, BECAUSE, IN REALITY, DEFENDANTS KNEW
THAT THEIR PURPORTEDLY PROPRIETARY TECHNOLOGY WAS, IN FACT, PUT
TOGETHER WITH DOCUMENTS AND TRADE SECRETS FROM ITS COMPETITORS.

1          **THE COURT:**  BUT WHAT DOES THAT HAVE TO DO WITH THE

2    CASE THAT WAS ADJUDICATED IN THIS COURT?  BECAUSE THERE'S A LOT

3    OF STUFF IN THE COMPLAINT ABOUT THE CASE THAT WAS

4    ADJUDICATED --

5          **MR. REHNS:**  RIGHT.

6          **THE COURT:**  -- AND THE RULING WHICH ISSUED.

7          **MR. REHNS:**  WHICH INCLUDES -- RIGHT, WHICH INCLUDES

8    PATENTS THAT NEVRO AND BOSTON SCIENTIFIC HAVE BEEN -- HAVE

9    CROSS MOVED OR COUNTERSUED ONE ANOTHER FOR PATENT INFRINGEMENT.

10          **THE COURT:**  OKAY.  LET ME ASK YOU TO EXPLAIN WITH

11    SOME SPECIFICITY.

12          WHAT DID THEY SAY PREVIOUSLY ABOUT THEIR PRODUCT THAT

13    WAS CONTRADICTED BY THE RULING IN THE PATENT CASE EARLIER THIS

14    YEAR?

15          **MR. REHNS:**  IT'S -- YOUR HONOR, IT'S ACTUALLY NOT THE

16    RULING ITSELF, PERHAPS, THAT I POINT YOU TO --

17          **THE COURT:**  BUT I DON'T UNDERSTAND --

18          **MR. REHNS:**  -- FOR PURPOSES OF NOW.

19          **THE COURT:**  -- BECAUSE IN YOUR COMPLAINT THERE ARE A

20    LOT ALLEGATIONS ABOUT THE RULING.

21          **MR. REHNS:**  ABSOLUTELY.

22          **THE COURT:**  AND HOW THE STOCK DROPPED IN THE WAKE OF

23    THE RULING, OR THE TENTATIVE RULING, RIGHT?  SO IT SEEMS

24    LIKE -- ALTHOUGH IT'S HARD TO FOLLOW YOUR COMPLAINT, IT SEEMS

25    LIKE YOU ARE BASING YOUR SECURITIES FRAUD CLAIM, IN SIGNIFICANT

1    PART, ON SOMETHING THAT THE DEFENDANTS SAID PUBLICLY TO

2    INVESTORS THAT WAS CONTRADICTED BY MY RULING, YET I CAN'T

3    FIGURE OUT WHAT THAT IS FROM YOUR COMPLAINT, FROM READING YOUR

4    COMPLAINT, SO I'M TRYING TO ASK YOU NOW, WHAT IS IT.

5            **MR. REHNS:**  ABSOLUTELY.  IT WAS -- AND IT IS BASED ON

6    THE MOTION THAT THIS -- THAT THEIR WORK WAS PROPRIETARY AND

7    NOVEL, AND YOUR SUMMARY --

8            (SIMULTANEOUS COLLOQUY.)

9            **THE COURT:**  DO YOU EVEN KNOW -- DO YOU EVEN KNOW WHAT

10   MY RULING WAS ABOUT?

11           **MR. REHNS:**  YOUR RULING WAS ABOUT CERTAIN PATENTS.

12           **THE COURT:**  WHY DON'T YOU DESCRIBE -- YEAH, DESCRIBE

13   MY RULING.

14           **MR. REHNS:**  YES, YOUR HONOR.

15           **THE COURT:**  WHICH IS THE BASE FOR YOUR SECURITIES

16   FRAUD CLAIM.

17           **MR. REHNS:**  IS ONE OF THE BASES, CORRECT.

18           **THE COURT:**  SO I PRESUME YOU HAVE A PRETTY GOOD

19   FAMILIARITY WITH WHAT MY RULING ACTUALLY WAS.

20           **MR. REHNS:**  ABSOLUTELY.  YOUR RULING HAD TO DO WITH

21   SEVERAL PATENTS THAT WERE DISPUTED BETWEEN BOSTON SCIENTIFIC

22   AND NEVRO IN WHICH YOU HELD THAT BOSTON SCIENTIFIC HAD NOT

23   INFRINGED ON NEVRO'S PATENTS.  I CAN GO INTO MORE

24   SPECIFICITY --

25           **THE COURT:**  YES, PLEASE.

1       **MR. REHNS:**  -- ABOUT THE INDIVIDUAL PATENT.

2       **THE COURT:**  SURE.

3       **MR. REHNS:**  SURE.  IF YOU JUST GIVE ME ONE MOMENT, I

4  WILL PULL UP THE -- SO A LOT OF IT HAD TO DO WITH THE

5  DEFINITION OF PERESIAN (PHONETIC), AND HOW THE PATENT WAS

6  DEFINED, AND HOW THE PATENT WAS SUBMITTED.  AND YOUR HONOR

7  RULED THAT THE TERMS WERE VAGUE ENOUGH THAT THEY WERE NOT, IN

8  FACT, PATENTABLE, SO TO SPEAK, AND, IN THAT CASE, DISMISSED

9  SIX, I BELIEVE, OF THE EIGHT CLAIMS THAT NEVRO BROUGHT AGAINST

10  BOSTON SCIENTIFIC.

11       WE ALLEGE -- AND THIS IS WHERE FIVE DAYS LATER WHEN

12  THE ANALYSTS' REPORT -- OR ANALYSTS FIRST REPORTED THIS TO THE

13  MARKET, WE ALLEGE THAT THIS IS WHAT CLUED THE MARKET INTO THE

14  FACT THAT NEVRO WAS NOT, IN FACT, A MARKET LEADER, THEY DID NOT

15  HAVE A PROPRIETARY NATURE, AND THEIR PRODUCT WAS NOT AS

16  PROTECTED AS PREVIOUSLY TOUTED AS PROPRIETARY AND NOVEL SUCH

17  THAT THEIR MARKET SHARE WAS NOW AT RISK.

18       THAT IS OUR CLAIM, WHICH WILL, OF COURSE, BE FURTHER

19  VETTED AND FURTHER FLUSHED OUT --

20       **THE COURT:**  BUT YOU'RE SUPPOSED TO VET BEFORE YOU

21  FILE A LAWSUIT.

22       **MR. REHNS:**  OF COURSE, AND WE HAVE, BUT --

23       **THE COURT:**  BUT IT DOESN'T SEEM LIKE YOU REALLY

24  UNDERSTAND MY RULING OR THE IMPLICATIONS OF IT FOR NEVRO.  AND

25  I'M -- AND SO I'M REALLY -- I'M CONCERNED THAT THIS IS -- I

1      HAVE TO TELL YOU THAT I'M INITIALLY CONCERNED THAT THIS IS ONE

2      OF THOSE REAL BOTTOM FEEDER SECURITIES FRAUD LAWSUITS, BECAUSE

3      I DON'T -- IT DOESN'T SEEM LIKE YOU HAVE ANY UNDERSTANDING OF

4      WHAT -- OF THE IMPLICATIONS OF MY PATENT RULING -- IT SEEMS

5      THAT YOU EVEN THINK THAT THE CASE THAT I ADJUDICATED WAS ABOUT

6      TRADE SECRETS OR SOMETHING LIKE THAT --

7              **MR. REHNS:**  NO, YOUR HONOR, WE --

8              **THE COURT:**  -- WHICH IT WASN'T.

9              **MR. REHNS:**  -- DO NOT BELIEVE IT WAS ABOUT TRADE

10      SECRETS.  WE BELIEVE THAT THE DELAWARE ACTION IN WHICH BOSTON

11      SCIENTIFIC SEPARATELY BROUGHT AN ACTION AGAINST NEVRO WAS ABOUT

12      THEFT OF TRADE SECRETS.

13              **THE COURT:**  AND SO IT SOUNDS LIKE MAYBE YOUR

14      SECURITIES FRAUD ACTION IS BASED ON THE ALLEGATIONS THAT BOSTON

15      SCIENTIFIC MADE AGAINST NEVRO; YOU JUST SORT OF CUT AND PASTED

16      THOSE ALLEGATIONS AND INCLUDED IT IN YOUR SECURITIES FRAUD

17      LAWSUIT.

18              **MR. REHNS:**  NO, WE DID NOT.  WE VETTED THOSE.  WE

19      WENT THROUGH DOCUMENTS THAT WERE SUBMITTED BOTH TO THIS COURT

20      IN BOSTON'S MOTION TO AMEND THEIR ANSWER AND COUNTERCLAIM, THE

21      DOCUMENTS THAT HAVE BEEN SUBMITTED IN THE DELAWARE ACTION, AS

22      WELL AS OTHER CASES THAT HAVE BEEN BROUGHT AGAINST NEVRO AND

23      ITS FORMER EMPLOYEES FOR SIMILAR ACTIONS IN THE PAST, AND WE

24      BELIEVE WE HAVE COLORABLE CLAIM.  WE BELIEVE WE HAVE A VIABLE

25      CLAIM WITH SUPPORT ON INFORMATION AND BELIEF TO BRING THIS

1  ACTION, WHICH IS WHERE -- WHICH IS WHY WE FILED THE COMPLAINT,

2  WHICH IS WHY OKLAHOMA POLICE FILED THE COMPLAINT.

3       **THE COURT:**  HOW DO YOU BELIEVE NEVRO'S MARKET SHARE

4  IN THE UNITED STATES WAS AFFECTED BY THE PATENT LITIGATION?

5       **MR. REHNS:**  BY YOUR PATENT LITIGATION?

6       **THE COURT:**  MM-HMM.

7       **MR. REHNS:**  WE DON'T.  WE BELIEVE, PERHAPS, THAT

8  THERE'S MULTIPLE ALLEGATIONS, MULTIPLE CLAIMS HERE.  WE THINK

9  THAT THE MARKET SHARE WAS -- SORRY -- LET ME BE CLEAR.  I THINK

10 I MISSPOKE THERE.

11      WE BELIEVE THAT THEIR MARKET SHARE WAS AFFECTED IN

12 THAT THE LESS PROPRIETARY THEIR PRODUCT WAS AND THE LESS

13 PROTECTED IT WAS BY PATENT, THAT OTHER COMPETITORS COULD COME

14 IN, WOULD COME IN -- AS ANALYSTS' REPORTS CONFIRMED, WOULD COME

15 IN AND TAKE MARKET SHARE.

16      I UNDERSTAND THAT FOLLOWING YOUR ORDER, THE PARTIES

17 IN THAT ACTION DID FILE A STIPULATION DISMISSING THE ACTION ON

18 THE BASIS THAT BOSTON SCIENTIFIC HAD NO INTENTION OF BRINGING

19 AN FH10 THERAPY TO MARKET IN THE UNITED STATES; HOWEVER, IT

20 STILL SHOWED THAT THE PATENTS THAT THEY WERE -- THAT WERE USED

21 TO COVER THEIR HF10, NEVRO'S HF10, AND SENZA SYSTEMS WERE NOT

22 AS PROTECTED AS THEY HAD PREVIOUSLY --

23      **THE COURT:**  WHY?

24      **MR. REHNS:**  -- TOLD THE CLASS.

25      **THE COURT:**  I DON'T UNDERSTAND WHY.  I MEAN, IT

1    STRUCK -- IT STRUCK ME THAT -- I MEAN -- IF I RECALL CORRECTLY,

2    THERE WAS NO -- THERE WAS NO -- NO ASPECT OF MY RULING, AND I

3    THINK THE MARKET PROBABLY MISUNDERSTOOD THIS AT FIRST, BUT

4    REALIZED IT SHORTLY AFTER THE RULING, AFTER PEOPLE HAD, LIKE, A

5    DAY TO DIGEST THE RULING, THAT THERE WAS NOTHING IN MY RULING,

6    IF I REMEMBER CORRECTLY -- I MEAN, IT MAY BE THAT I'M

7    MISREMEMBERING, BUT THERE WAS NOTHING IN MY RULING THAT

8    AFFECTED NEVRO'S HOLD ON THE UNITED STATES MARKET FOR THIS

9    PRODUCT.  AM I REMEMBERING THAT CORRECTLY?

10           **MR. RAWLINSON:**  THAT'S OUR VIEW, YOUR HONOR, AND

11   WE'RE READY TO ADDRESS IT IN THE MOTION TO DISMISS.

12           **THE COURT:**  YEAH.  WHAT ARE THE OTHER -- WHAT ARE

13   SOME OF THE OTHER THINGS YOU THINK THAT -- WHAT ARE SOME OF THE

14   OTHER MATERIAL MISREPRESENTATIONS THAT YOU THINK NEVRO MADE

15   THAT ARE NOT RELATED TO THIS LAWSUIT?

16           **MR. REHNS:**  NOT RELATED TO THIS LAWSUIT HAS TO DO --

17           **THE COURT:**  NOT RELATED TO THE PATENT LAWSUIT.

18           **MR. REHNS:**  TO THE CALIFORNIA ACTION.

19           A LARGE PART OF IT IS WHAT WE PREVIOUSLY MENTIONED

20   BRIEFLY, THAT THE -- YOU KNOW, THE THEFT OF TRADE SECRET ACTION

21   THAT IS PROCEEDING IN DELAWARE.

22           **THE COURT:**  WHAT'S THE STATUS OF THAT ACTION?

23           **MR. REHNS:**  I BELIEVE THE MOTION TO DISMISS IS FULLY

24   BRIEFED AND AWAITING ADJUDICATION.

25           **THE COURT:**  SO YOU'RE -- SO IT'S JUST BASED ON

1    ALLEGATIONS IN A COMPLAINT THAT YOU --

2            **MR. REHNS:**  SUPPORTED BY DOCUMENTS THAT HAVE BEEN PUT

3    IN BY BOSTON SCIENTIFIC OF THE -- YOU KNOW, OF WHAT WAS TAKEN

4    AND WHO TOOK IT.  IT IS NOT GENERAL.  IT TALKS SPECIFICALLY

5    ABOUT MR. THACKER, THE FORMER EMPLOYEE.

6            THERE WAS A PREVIOUS LITIGATION THAT WAS -- THAT WAS

7    SETTLED IN WHICH A MR. FLECK, I BELIEVE WAS HIS NAME, WAS

8    ACCUSED OF DOING THE SAME THING, OF TAKING DOCUMENTS FROM

9    BOSTON SCIENTIFIC AND OPENING IT AND USING IT WHILE EMPLOYED BY

10   NEVRO IN REGARDS TO ITS HF10 THERAPY.

11           **THE COURT:**  OKAY.  WHAT ELSE OTHER THAN THE -- OTHER

12   THAN THE THEFT OF TRADE SECRETS AND THE PATENT LITIGATION, WHAT

13   ELSE?  ANYTHING ELSE?

14           **MR. REHNS:**  AT THIS POINT IT HAS TO -- IT'S IN LARGE

15   PART BASED ON THE COMPANY'S STATEMENTS IN ITS 2017 10K,

16   RELEASED ON FEBRUARY 28TH -- SORRY, FEBRUARY 22ND, 2018, THAT

17   ITS POSITIVE RESULTS WERE DRIVEN BY CONTINUED ADOPTION AND

18   DEMAND FOR ITS HF10 THERAPY GLOBALLY AND CONSISTENT WITH

19   EXECUTION BY (INDISCERNIBLE) SALES TEAM.

20           WHAT LATER CAME OUT WAS THAT THE SALES TEAM NEEDED A

21   FULL -- YOU KNOW, NEEDED TO BE RESTRUCTURED, THOSE NEEDED TO BE

22   REHIRED.  ITS VP OF WORLDWIDE SALES WAS TERMINATED ABRUPTLY

23   WHICH CAUSED A -- I BELIEVE A 16-PERCENT MARKET DROP IN AND OF

24   ITSELF, AS WELL AS STATEMENTS THAT, YOU KNOW, ANALYSTS' REPORTS

25   DISCLOSED TO THE MARKET FOR THE FIRST TIME REGARDING THE FACT

1    THAT THE STATEMENTS -- THE COMPANY'S MESSAGES THAT ITS HF10

2    THERAPY WAS, IN FACT, SUPERIOR WAS NOT RESONATING AND THAT

3    THERE WAS A MUCH LOWER REAL WORLD EFFICACY, I BELIEVE WAS THE

4    TERMINOLOGY USED WITH REGARD TO ITS PRODUCTS.

5         **THE COURT:**  OKAY.  WELL, WE'LL HAVE -- I SUPPOSE

6    WE'LL HAVE MORE OF AN OPPORTUNITY TO DISCUSS THESE MATTERS

7    LATER.  SO YOU, SO THE MOTION TO BE APPOINTED AS LEAD PLAINTIFF

8    IS UNOPPOSED, AND IT'S GRANTED.

9         **MR. REHNS:**  THANK YOU, YOUR HONOR.

10        **THE COURT:**  WHAT -- DO YOU ALL -- YOU ALL SUBMITTED A

11   STIPULATION REGARDING SCHEDULING, I BELIEVE.  DID I SIGN THAT?

12        **MR. REHNS:**  YOU DID NOT.  I HAVE A COPY HERE.

13        **THE COURT:**  WHAT'S THE -- WHAT'S THE -- I HAVE IT

14   HERE.  WHAT'S THE PROPOSED SCHEDULE?

15        **MR. REHNS:**  THE PROPOSED SCHEDULE IS AN AMENDED

16   COMPLAINT FILED ON FEBRUARY 5TH, 2019.  MOTIONS TO DISMISS WILL

17   BE FILED ON APRIL 17TH.  OPPOSITIONS BY JUNE 17TH, AND REPLIES

18   BY AUGUST 1ST.

19        **THE COURT:**  I DON'T UNDERSTAND WHY IT HAS TO BE SUCH

20   AN ELONGATED SCHEDULE.  YOU KNOW, YOU'RE BAKING IN -- SO YOU'RE

21   GIVING YOURSELF --

22        **MR. REHNS:**  IT'S A 60, 60, 60, 45.

23        **THE COURT:**  TWO MONTHS TO FILE AN AMENDED COMPLAINT,

24   TWO MORE MONTHS AFTER THAT TO FILE A MOTION TO DISMISS, TWO

25   MORE MONTHS AFTER THAT TO FILE AN OPPOSITION?

1          OKAY.  SO THE AMENDED COMPLAINT WILL BE DUE IN THE

2   MIDDLE OF JANUARY.

3          DO YOU HAVE A DATE, KRISTIN?  OKAY.  AMENDED

4   COMPLAINT DUE JANUARY 18TH.

5          **MR. REHNS:**  OKAY.

6          **THE COURT:**  MOTION TO DISMISS DUE FOUR WEEKS AFTER

7   THAT?

8          **THE CLERK:**  FEBRUARY 15.

9          **THE COURT:**  OPPOSITION DUE FOUR WEEKS AFTER THAT.

10  IT'S ALREADY QUITE AN ELONGATED SCHEDULE.

11         **THE CLERK:**  MARCH 15.

12         **THE COURT:**  REPLY DUE THREE WEEKS AFTER THAT, AND

13  HEARING WILL BE IN LATE APRIL.

14         **MR. REHNS:**  THANK YOU, YOUR HONOR.

15         **THE COURT:**  SURE.

16         **UNIDENTIFIED SPEAKER:**  MAY 2ND.

17         **MR. REHNS:**  SORRY.  SAY AGAIN?

18         **THE CLERK:**  MAY 2ND.

19         **THE COURT:**  HEARING MAY 2ND; IS THAT OKAY?

20         **MR. REHNS:**  ABSOLUTELY.

21         **MR. RAWLINSON:**  THAT'S FINE, YOUR HONOR.

22         **THE COURT:**  ALL RIGHT.  THANK YOU VERY MUCH.

23         **MR. REHNS:**  THANK YOU, YOUR HONOR.

24         **MR. RAWLINSON:**  THANK YOU, YOUR HONOR.

25         (PROCEEDINGS ADJOURNED AT 10:22 A.M.)

1    **CERTIFICATE OF TRANSCRIBER**

2

3         I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

4    TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF

5    THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE

6    U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE

7    PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE

8    ABOVE MATTER.

9         I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR,

10   RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN

11   WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT

12   FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE

13   ACTION.

14

15                    *jmcolumbini*

16                    JOAN MARIE COLUMBINI

17                    DECEMBER 28, 2018

18

19

20

21

22

23

24

25

**JOAN MARIE COLUMBINI, CSR, RPR**
**RETIRED OFFICIAL COURT REPORTER, USDC**
**510-367-3043**