LATHAM & WATKINS LLP
  Matthew Rawlinson (Bar No. 231890)
   *matt.rawlinson@lw.com*
140 Scott Drive
Menlo Park, California  94025
Telephone:  +1.650.328.4600
Facsimile:  +1.650.463.2600

LATHAM & WATKINS LLP
  Elizabeth Deeley (Bar No. 230798)
   *elizabeth.deeley@lw.com*
  Grant E. Strother (Bar No. 284612)
   *grant.strother@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California  94111
Telephone:  +1.415.391.0600
Facsimile:  +1.415.395.8095

Attorneys for Defendants
NEVRO CORP., RAMI ELGHANDOUR and
ANDREW GALLIGAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NEVRO CORP., RAMI ELGHANDOUR and ANDREW GALLIGAN,<br><br>Defendants. | CASE NO. 3:18-CV-05181-VC<br><br>CLASS ACTION<br><br>**DEFENDANTS' NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................. ii

NOTICE OF MOTION AND MOTION ............................................................................................. v

STATEMENT OF RELIEF REQUESTED ......................................................................................... v

ISSUE TO BE DECIDED .................................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................... 1

I.     INTRODUCTION ................................................................................................................. 1

II.    BACKGROUND .................................................................................................................... 2

       A.    Nevro Develops Its Senza System and HF10 Therapy .......................................... 2

       B.    The Patent Litigation Between Boston Scientific and Nevro ................................ 3

       C.    Plaintiff Sues Nevro .............................................................................................. 4

III.   ARGUMENT ......................................................................................................................... 5

       A.    Plaintiff Fails to Plead Falsity or Scienter ........................................................... 6

             1.    The Core Statements at Issue Are Non-Actionable Puffery ...................... 6

             2.    Plaintiff Fails to Plead That Any of Nevro's Statements Are
                   False ........................................................................................................... 7

             3.    Plaintiff Fails to Plead Scienter .............................................................. 10

       B.    Plaintiff Fails to Plead Loss Causation ............................................................... 12

       C.    Plaintiff Fails to Plead a Claim Under Section 20(a) of the
             Exchange Act ......................................................................................................... 15

IV.    CONCLUSION .................................................................................................................... 15

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Abdo v. Fitzsimmons*,
No. 17-CV-00851-EDL, 2017 WL 6994539 (N.D. Cal. Nov. 3, 2017) ...................................7

*In re Apple Computer Sec. Litig.*,
886 F.2d 1109 (9th Cir. 1989) ...................................................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................................................................5

*Attia v. Google LLC*,
No. 17-cv-06037-BLF, 2018 WL 2971049 (N.D. Cal. Jun. 13, 2018)......................................9

*Bonanno v. Cellular Biomedicine Grp., Inc.*,
No. 15-cv-01795-WHO, 2016 WL 4585753 (N.D. Cal. Sept. 2, 2016)...................................14

*City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*,
442 F. App'x 672 (3d Cir. 2011) ..............................................................................................12

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005)........................................................................................................5, 6, 12

*Eshelman v. OrthoClear Holdings, Inc.*,
No. C 07-1429 JSW, 2008 WL 171059 (N.D. Cal. Jan. 18, 2008)....................................10, 12

*In re Intrexon Corp. Sec. Litig.*,
No. 16-CV-02398-RS, 2017 WL 732952 (N.D. Cal. Feb. 24, 2017) ...............................6, 7, 9

*Leadsinger, Inc. v. BMG Music Publ'g*,
512 F.3d 522 (9th Cir. 2008) ....................................................................................................15

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002) ..................................................................................................12

*Loos v. Immersion Corp.*,
762 F.3d 880 (9th Cir. 2014) ....................................................................................................13

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011)........................................................................................................................6

*Metzler Inv. GMBH v. Corinthian Colls.*,
540 F.3d 1049 (9th Cir. 2008) ..................................................................................................12

*Meyer v. Greene*,
710 F.3d 1189 (11th Cir. 2013) ................................................................................................12

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) ...........................................................................................11

*Oestreicher v. Alienware Corp.*,
544 F. Supp. 2d 964 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009) .....................7

*In re Omnicom Grp., Inc. Sec. Litig.*,
597 F.3d 501 (2d Cir. 2010)...............................................................................................13

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*,
845 F.3d 1268 (9th Cir. 2017) ...........................................................................................10

*In re Rigel Pharm., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) ....................................................................................6, 11, 12

*Rok v. Identiv, Inc.*,
No. 15-CV-5775-CRB, 2017 WL 35496 (N.D. Cal. Jan. 4, 2017), *aff'd sub nom. Cunningham v. Identiv, Inc.*, 716 F. App'x 663 (9th Cir. 2018)...............................12, 15

*Sapssov v. Health Mgmt. Assocs., Inc.*,
22 F. Supp. 3d 1210 (M.D. Fla. 2014), *aff'd*, 608 Fed. Appx. 855 (11th Cir. 2015) .......................................................................................................................13, 14

*In re Siebel Sys., Inc. Sec. Litig.*,
No. C 04-0983 CRB, 2005 WL 3555718 (N.D. Cal. Dec. 28, 2005) .......................................7

*United States ex rel. Silingo v. WellPoint, Inc.*,
904 F.3d 667 (9th Cir. 2018) .................................................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)............................................................................................................11

*Union Asset Mgmt. Holding AG v. Sandisk Corp.*,
No. 15-CV-01455-VC, 2016 WL 406283 (N.D. Cal. Jan. 22, 2016)................................6, 10

*Utterkar v. Ebix, Inc.*,
No. 14-CV-02250-LHK, 2015 WL 5027986 (N.D. Cal. Aug. 25, 2015)...............................15

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
195 F. Supp. 3d 528 (S.D.N.Y. 2016)....................................................................................6

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009), *as amended* (Feb. 10, 2009).......................................................15

## STATUTES

15 U.S.C. § 78u–4(b)(1) ............................................................................................................6

15 U.S.C. § 78u–4(b)(2)(A)........................................................................................................6

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iii

Securities Exchange Act § 10(b).................................................................................... *passim*

Securities Exchange Act § 20(a).......................................................................................4, 6, 15

**RULES**

Fed. Rule of Civ. Proc. 9(b).................................................................................................6

Fed. Rule of Civ. Proc. 11(b)...............................................................................................9

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 2, 2019 at 10:00 AM PT or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Vince Chhabria at the United States District Court for the Northern District of California, San Francisco Division, located at the San Francisco Courthouse, Courtroom 4 – 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Nevro Corp., Rami Elghandour and Andrew Galligan will and hereby do move the Court to dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## STATEMENT OF RELIEF REQUESTED

Defendants Nevro Corp., Rami Elghandour and Andrew Galligan respectfully request an order dismissing the claims against them in this action with prejudice, for the reasons set forth in the Memorandum of Points and Authorities below, the papers on file in this action, and any other evidence or argument the Court may properly receive in connection with this motion.

**ISSUE TO BE DECIDED**

Whether the Amended Complaint should be dismissed for Plaintiff's failure to allege facts sufficient to state a claim.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Plaintiff filed this lawsuit claiming that Defendants—Nevro and two of its officers—allegedly committed securities fraud when Nevro told the public that it had "developed" its groundbreaking spinal cord stimulation systems technology and claimed that the technology was "proprietary." Plaintiff filed its claims shortly after this Court issued a tentative opinion in a separate action holding a number of patent claims asserted by Nevro against Boston Scientific invalid on grounds of indefiniteness. At the hearing to appoint a lead plaintiff, this Court expressed skepticism that its decision to invalidate certain patent claims on purely legal grounds could possibly constitute the revelation of a fraud. Plaintiff then filed its Amended Complaint, abandoning all claims based on this Court's patent decision and instead focusing entirely on certain trade secret *allegations* made by Boston Scientific.

Plaintiff's changes, however, exacerbate the problems with its claims and confirm the absence of any basis for securities fraud. Specifically, the revised claims fail for at least four reasons.

*First*, the challenged statements are not actionable. Plaintiff alleges that Nevro's claim that it "developed" its own technology, and that this technology was "proprietary" and "once in a generation" were materially false. It is well-settled, however, that such language constitutes non-actionable puffery that is too general to support any claim for securities fraud.

*Second*, Plaintiff does not come close to alleging facts that (even if taken as true) would render any of Nevro's statements false. Nothing in Plaintiff's allegations suggests that Nevro did not develop and does not possess its own proprietary technology.

*Third*, having failed to properly allege any false statement of fact, Plaintiff necessarily fails to plead a compelling inference of scienter. Plaintiff also asserts no facts that tie any of its theories to the named Defendants or suggest that they did not genuinely believe the claims about

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

1

Nevro's technology. The theories Plaintiff does assert as grounds to "infer" scienter in the absence of concrete factual allegations—routine business practices and structures—have been rejected many times.

*Fourth*, Plaintiff has not even plausibly alleged loss causation. In revising its claims to remove allegations about this Court's patent decision, Plaintiff removed all of the "corrective disclosures" except those that purport to "reveal" the trade secret allegations asserted by Boston Scientific. But these very same trade secret allegations—allegations that Plaintiff now claims constitute the sole "corrective disclosures" that "revealed" the fraud to the market—were made public in this Court *months before* the date of the alleged corrective disclosures. It is black letter law that previously public information cannot—merely by virtue of being published again— become a "corrective disclosure."

Given these failings, additional amendment would be futile, and the Court should therefore dismiss the Amended Complaint with prejudice.

## II.    BACKGROUND

### A.    Nevro Develops Its Senza System and HF10 Therapy

Spinal cord stimulation ("SCS") technology has been used for nearly 40 years to treat chronic pain. Nevro was founded in 2006 to develop a novel SCS therapy. ¶ 16; Ex.[1] 1 (Nevro's Fiscal Year 2017 10-K) at 1. Nevro's Senza system provides SCS therapy that Nevro commercially markets as HF10. Nevro's Senza system and its HF10 therapy are covered by over 170 United States and international patents. Ex. 1 at 14. In an FDA-monitored trial pitting Senza against Boston Scientific Corporation's ("BSC") SCS product known as "Precision," Senza was nearly twice as effective at relieving chronic pain. *Id.* at 4, 7–10, 65. As a result, when the FDA cleared Nevro's Senza system for sale in the United States in 2015, it awarded the Senza system a "superiority" label—the first ever in the SCS industry. *See id.* at 1; Ex. 2; ¶ 23.

---

[1]  Unless otherwise specified, "¶" refers to paragraphs in the Amended Complaint and "Ex." refers to exhibits to the Declaration of Grant E. Strother filed in support of this motion.

**B.      The Patent Litigation Between Boston Scientific and Nevro**

In November 2016, Nevro filed a patent infringement action in this Court alleging that BSC was infringing six patents in its attempts to develop an SCS system that could compete with Senza. *Nevro Corp. v. Boston Scientific Corp., et al.*, No. 16-cv-06830-VC (N.D. Cal.) ("California Action"), D.I. 1. In November 2017, BSC moved in the California Action to amend its answer and assert the counterclaims of trade secret misappropriation that now form the basis for Plaintiff's complaint of securities fraud here. BSC described these allegations in a public filing and a redacted version of the counterclaims and exhibits, which BSC attempted to file under seal. Ex. 3 ("Motion to Amend"); Ex. 4 at 20–27 ("Redacted Counterclaims"). On December 20, 2017, this Court denied both BSC's motion to amend and its motions to seal related exhibits,[2] and on February 15, 2018, this Court ordered all of the accompanying documents unsealed and made them publicly available in full. *See* Ex. 12 (California Action, D.I. 247) at 2; Ex. 13 (California Action, D.I. 294) at 3.[3]

More than two months later, on April 27, 2018, BSC filed a lawsuit in Delaware, alleging substantially the same trade secret allegations and supporting facts it had previously submitted in the California Action. *See* Ex. 15 (*Boston Scientific Corp., et al. v. Nevro Corp.,* C.A., No. 18-644 (GMS) (D. Del.) ("Delaware Action"), D.I. 1). When it filed the Delaware Action, BSC did not seek to seal any of the already public information, and instead, filed all of the material unredacted. *See id.* Last September, Nevro moved to dismiss the Delaware Action, because—among other reasons—the complaint failed to allege that Nevro knowingly acquired, disclosed, or used any trade secrets. *See* Ex. 18 (Delaware Action, D.I. 11). Nevro's motion is currently pending. *See* Ex. 16 (Delaware Action, D.I. 17).

---

[2] The related, sealed exhibits included California Action, D.I. 192-6 (Ex. 5 ("Unredacted Counterclaims"), and 202-8, 202-14, 202-16, 202-18, 202-22, and 202-24 (Exs. 6–11 ("Unsealed Exhibits")).

[3] On December 28, 2017, before the Court denied a motion by BSC for reconsideration of the Court's December 20 ruling and ordered the remainder of the Unsealed Exhibits to be publicly filed, Nevro publicly filed unredacted copies of certain of the Unsealed Exhibits pursuant to a stipulation with BSC. *See* Ex. 14 (California Action, D.I. 258) at 1–2 & Exs. G (corresponding to D.I. 202-14), J (D.I. 202-16), K (D.I. 202-18).

### C.    Plaintiff Sues Nevro

On August 23, 2018, Plaintiff filed a complaint on behalf of persons that acquired Nevro stock, asserting violations of Sections 10(b) and 20(a) of the Exchange Act. *See* D.I. 1. The original complaint primarily focused on alleged corrective disclosures supposedly contained in the Court's July 2018 patent ruling and Nevro's May 2018 earnings announcement, though it also referenced other alleged revelations, including the Delaware Action complaint. *See id.*

At the December 20, 2018 hearing on Plaintiff's motion to be appointed as lead plaintiff, the Court expressed confusion regarding how its tentative decision invalidating patent claims for indefiniteness could be a predicate for a fraud claim. D.I. 47 at 4:24–5:4 ("Although it's hard to follow your complaint, it seems like you are basing your securities fraud claim, in significant part, on something that the defendants said publicly to investors that was contradicted by my ruling, yet I can't figure out what that is from your complaint . . . so I'm trying to ask you now, what is it."). Plaintiff responded by admitting that its claim was based squarely on the Court's patent ruling:

> And Your Honor ruled that the terms were vague enough that they were not . . . patentable . . .and in that case, dismissed six, I believe of the eight claims that Nevro brought against Boston Scientific.
>
> We allege—and this is where five days later when the analysts' report—or analysts first reported this to the market, we allege that this is what clued the market into the fact that Nevro was not, in fact, a market leader, they did not have a proprietary nature, and their product was not as protected as previously touted as proprietary and novel such that their market share was not at risk. That is our claim[.]

*Id.* at 6:6–18.

On January 18, 2019, following the Court's comments, and the skepticism it expressed regarding such a claim (*see, e.g., id.* at 6:23–24 ("But it doesn't seem like you really understand my ruling or the implications for Nevro")), when Plaintiff filed its Amended Complaint, Plaintiff abandoned its central claim entirely, striking its allegations regarding this Court's patent decision (including removing several "corrective disclosures" purportedly related to the patent decision). Instead, it attempted to reshape the claims entirely to focus on BSC's trade secret allegations.

D.I. 50. Plaintiff's revised pleading essentially claims that BSC's trade secret allegations demonstrate that the following statements by Nevro were false and misleading:

- Nevro's various statements that it <u>developed</u> the Senza system and HF10 therapy. *E.g.*, ¶ 81 (quoting Ex. 1 ("Nevro has <u>developed</u> and commercialized the Senza system").

- Nevro's statements that those technologies are <u>proprietary</u>. *E.g.*, ¶ 82 (quoting Ex. 1 ("<u>we have built competitive advantages through our proprietary technology</u>")).

- Nevro's occasional characterization of that system as a "<u>once in a generation</u> medical technology innovation." *E.g.*, ¶ 86 quoting Ex. 1 ("At our core Nevro's comprise[d] of exceptional people, a truly once in a generation medical technology innovation).[4]

- Nevro's statement that <u>it has procedures in place to prevent theft of intellectual property</u>. *E.g.*, ¶ 92 (quoting Nevro's "1Q18 10-Q . . . : 'we have procedures in place that seek to prevent our employees . . . from using the intellectual property, proprietary information, know-how or trade secrets of others in their work for us.'").

Plaintiff claims that the "truth" regarding these alleged misstatements by Nevro was revealed by the filing of the Delaware Action on April 27, 2018, and the publication on July 2, 2018 of a Morgan Stanley report that mentioned the Delaware Action.

## III.    ARGUMENT

To state claim under Section 10(b) a plaintiff must allege (1) a material misrepresentation or omission of fact, (2) made in connection with the purchase or sale of securities, (3) made with scienter, (4) on which plaintiff relied, (5) which proximately caused plaintiff's economic loss. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005).

A court begins its analysis of a complaint by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Taking only "well-pleaded factual allegations" as true, a court then "determine[s] whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

---

[4] Although Plaintiff frames its claim around multiple statements (*e.g.*, that Nevro's technology is "proprietary" or "once in a generation") in each case, Plaintiff asserts they are false because of the trade secret allegations, rather than some separate set of facts.

A plaintiff in a private securities fraud action also must satisfy the heightened pleading requirements of both Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act. *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012). Thus, for each alleged misstatement or omission, a plaintiff must allege, with particularity, the "reasons why the statement is misleading." 15 U.S.C. § 78u–4(b)(1); *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 n.4 (2011); *United States ex rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018) ("a pleading must identify 'the who, what, when, where, and how of the misconduct charged,'" "so that [Defendants] can defend against the charge and not just deny that they have done anything wrong."). It also must allege, with particularity, facts giving rise to a "strong inference" of scienter. *In re Rigel*, 697 F.3d at 877 (quoting 15 U.S.C. § 78u–4(b)(2)(A)); *see also Union Asset Mgmt. Holding AG v. Sandisk Corp.*, No. 15-CV-01455-VC, 2016 WL 406283, at *4 (N.D. Cal. Jan. 22, 2016) (quotations omitted). And a plaintiff must plead facts that (if proven true) would establish loss caused by the revelation to the market of the fraudulently concealed facts. *See Dura Pharm.*, 544 U.S. at 341–46.

Here, Plaintiff fails to state a claim under Section 10(b) (and therefore under Section 20(a) as well) because it fails to adequately allege falsity, scienter and loss causation.

### A.    Plaintiff Fails to Plead Falsity or Scienter

Plaintiff alleges that Nevro committed securities fraud when it claimed it had "developed" its "proprietary" Senza system, and made other similar statements. *See* ¶ 68; *see* ¶¶ 76–94. For the reasons discussed below, none of these claims is viable.

#### 1.    The Core Statements at Issue Are Non-Actionable Puffery

Courts have repeatedly recognized that vague, general, and broad terms like "proprietary" and "developed" are non-actionable puffery.[5] *See, e.g.*, *In re Intrexon Corp. Sec. Litig.*, No. 16-CV-02398-RS, 2017 WL 732952, at *3 (N.D. Cal. Feb. 24, 2017); *In re Virtus Inv. Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d 528, 538 (S.D.N.Y. 2016) ("[S]tatements that the [defendant's] strategy is . . . 'proprietary' are mere puffery and 'too general to cause a reasonable investor to

---

[5] Consistent with this fact, Plaintiff does not even bother to define with particularity "Senza system," "HF10 therapy," "proprietary," and "developed."

rely upon them[.]'") (internal citation omitted). In *Intrexon*, the court held that defendant's statement—that its "extensive knowledge and experience . . . coupled with [its] suite of proprietary and complementary technologies, provides us with a first-mover advantage in synthetic biology"—was puffery despite plaintiff's allegations that the technology was not proprietary. *See In re Intrexon Corp.*, 2017 WL 732952, at *3. The court reasoned that these were "non-specific assertions" and "general characterizations" that "cannot not give rise to fraud." *Id.* That is the situation here. Nevro simply states the company's "belie[f]" that its "proprietary" technology and "extensive" intellectual property that it "developed" gives it a "competitive advantage." *See id.*; *see, e.g.*, Ex. 1 at 1–3.

Nevro's statements that Senza is a "once in a generation therapy" or is based on "extensive intellectual property" likewise amount to the type of "feel-good" statements touting the groundbreaking or superior nature of a product that courts routinely hold amount to non-actionable puffery. *See Abdo v. Fitzsimmons*, No. 17-CV-00851-EDL, 2017 WL 6994539, at *1 (N.D. Cal. Nov. 3, 2017) (holding defendant's description of its technology as a "game-changer" was puffery); *In re Siebel Sys., Inc. Sec. Litig.*, No. C 04-0983 CRB, 2005 WL 3555718, at *3 (N.D. Cal. Dec. 28, 2005) (explaining that court has previously held statements touting new products as "technological advancements" to be non-actionable); *cf. Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009) (holding in the consumer protection context that "generalized and vague statements of product superiority such as . . . 'more innovative than competing machines' are non-actionable puffery").

    2. <u>Plaintiff Fails to Plead That Any of Nevro's Statements Are False</u>

Putting aside that the challenged statements are—by their very nature—not actionable, Plaintiff also does not come close to pleading facts that (even if assumed to be true) would demonstrate that the challenged statements are false.

      a. The Amended Complaint Does Not Adequately Plead That Nevro's Claim That It "Developed" Its "Proprietary" Technology Is False

Most fundamentally, Plaintiff does not plead any specific facts suggesting that BSC technology was incorporated into any Nevro product, much less a specific product feature. Nor

does it allege any facts that would support the conclusion that Nevro incorporated any such technology into any of the features that differentiate its Senza system from the competition, let alone all of those features. Indeed, Plaintiff pleads no facts that suggest any relationship (much less a necessary relationship) between BSC materials and the features that led to FDA approval or Senza's designation as "superior," or any feature that has led to Nevro's marketplace success. Nor could Plaintiff make any such claim in good faith based on the BSC lawsuit that is the entire remaining basis for Plaintiff's claims.

Plaintiff does not even adequately plead *what* BSC materials were allegedly used improperly. Instead, Plaintiff does nothing more than generally allege that certain former BSC employees who retained largely unspecified documents were part of the Senza team, and from that fact infers that they used BSC knowledge to develop critical parts of the Senza system. *E.g.*, ¶¶ 36, 40. But the Amended Complaint lacks any allegations that any specific BSC trade secrets were used. Nor does the Amended Complaint describe *how* any such unspecified "secrets" were used or identify *what* Senza-related patents or other know-how allegedly incorporate BSC's proprietary information. The only two BSC documents of any kind that Plaintiff specifically identifies are a "protocol used by BSC during its clinical investigation of Precision" titled "Stimulus$^{TM}$ Confirmatory Study," and a "Spinal Cord Stimulator Clinician's Programming System Module Specification," and Plaintiff never describes any facts that remotely suggest that any "secret" from these documents was incorporated in Nevro's products, much less that the secret was so significant it could somehow render Nevro's technology entirely non-proprietary. ¶ 35; *see* ¶¶ 37–38, 57–61. Having failed to do so, Plaintiff can hardly claim that such documents—or any of the other unspecified materials the Amended Complaint references—are somehow so critical to the Senza system that it would be false or misleading merely to describe Senza as "proprietary" to Nevro.

The Amended Complaint's most specific allegation (which is lifted from the Delaware Action) states that some of the later Nevro employees "took part in meetings specifically for the purpose of discussing how Precision could be programmed to deliver electrical stimulation at 10,000 Hz—the same high frequency later claimed to be 'proprietary' by Nevro." ¶ 33. But this

allegation undercuts Plaintiff's claim. The allegation suggests nothing more than that BSC employees once had a meeting to discuss a problem that BSC has still not solved—but one that Nevro *has* since solved, resulting in a novel technology that BSC was not able to develop. Nothing about such an allegation suggests the existence of a trade secret by BSC at the time of the meeting, much less that Nevro has incorporated this trade secret into its own product or (if it had, which it did not) that it would render the totality of Nevro's system "not proprietary."[6]

Federal courts have previously rejected similarly structured (but far more robust) claims on the grounds that plaintiff's proposed premise (that someone has accused the defendant of an intellectual property violation of some sort) is not sufficient to support its conclusion (that all of defendants' claims about owning its intellectual property are invalid). In *In re Intrexon*, for example, the court addressed "statements relate[d] to [defendant's] entire suite of technologies" that made "no specific representations about the provenance or value of *any specific* technology." 2017 WL 732952, at \*3 (emphasis added). Accordingly, the court held that "even if Plaintiff's allegations sufficed to establish that one or two of [defendant's] technologies were undifferentiated . . . that alone would not establish the falsity of the statements regarding [defendant's] suite of technologies." *Id.* The same is true—but far more so—here. Nevro has made statements about technology comprised of a host of underlying intellectual property. Plaintiff's suggestion that one unspecified element of this technology might be tainted by some unspecified trade secret (a suggestion Nevro denies), is simply insufficient to render false Nevro's claims that it developed and possesses proprietary technology. *See id.*; *see also*

---

[6] The only apparent source of Plaintiff's allegations about how Nevro's Senza system allegedly incorporates Boston Scientific's technology is Boston Scientific's complaint in the Delaware action—not any specific piece of evidence, or even Plaintiff's own "information and belief." ¶¶ 51–54, 57–60 (citing the Delaware Action complaint). But, Boston Scientific made each of the allegations Plaintiff cites in the Amended Complaint related to how Senza purportedly incorporated Boston Scientific trade secrets based on—at most—its own "information and belief." *See* Ex. 15 ¶¶ 1, 30, 32, 103, 108 (portions of the Delaware Action complaint cited by Am. Compl. on this point). Even putting aside their facial deficiencies, allegations like these that are essentially copied and pasted from another complaint—without further personal investigation by a plaintiff—cannot support a claim. *See Attia v. Google LLC*, No. 17-cv-06037-BLF, 2018 WL 2971049, at \*15 (N.D. Cal. Jun. 13, 2018) ("[A]ll of the allegations regarding [other] lawsuits should be disregarded unless and until Plaintiffs satisfy Rule 11(b)'s requirement that they personally investigate their claims against Defendants. . . . Plaintiffs may not simply regurgitate other parties' pleadings to establish" their claims).

*Eshelman v. OrthoClear Holdings, Inc.*, No. C 07-1429 JSW, 2008 WL 171059, at *5 (N.D. Cal. Jan. 18, 2008) ("The fact that [defendant's competitor] alleged infringement and the fact that [defendant] settled the suit does not indicate that there was indeed a known conflict or infringement of any intellectual property" that rendered representations to the contrary false).

> b.   The Amended Complaint Does Not Adequately Plead Any Other False Statement

For the same reasons, the Amended Complaint fails to assert a colorable claim that Nevro's description of its technology as "once in a generation" is false and misleading. Plaintiff appears to have no basis for its claim beyond the same allegations regarding BSC's trade secret allegations. But as described above, these allegations do not identify any factually incorrect statement that Nevro has made, and they fail to allege any facts that, if true, would establish that (1) Nevro has misused any BSC trade secrets, or (2) any such secret has been incorporated into an element of Nevro's system.

Finally, Plaintiff alleges that Nevro's statement that "we have procedures in place that seek to prevent our employees and consultants from using" others' proprietary information is false because Nevro allegedly misappropriated BSC trade secrets. This allegation is bizarre on its face since *Nevro* discovered that some employees had retained documents when they left BSC and informed BSC of the facts. ¶¶ 32, 37 (citing Exs. 24–25 (California Action, D.I. 203-7, 203-16)); ¶ 35 (citing Ex. 23 (California Action, D.I. 193-9)). Moreover, an unproven allegation that someone breached company policy is hardly proof that the policies failed, much less that policies did not exist or were generally ineffective, or that Nevro did not genuinely "seek" to prevent its employees from using others' proprietary information. *See* ¶ 94; *cf. Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1276 (9th Cir. 2017) (aspirational statements about corporate codes and policies are not actionable).

> 3.   Plaintiff Fails to Plead Scienter

The Amended Complaint must "state with particularity facts giving rise to a strong inference that the defendant" "engaged in intentional conduct or deliberate recklessness." *Union Asset*, 2016 WL 406283, at *4 (quotations omitted). A strong inference is not a "plausible or

reasonable" one—"it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights*, *Ltd.*, 551 U.S. 308, 314, 324 (2007). Nothing in Plaintiff's allegations seriously calls into question that Nevro genuinely, and rightly, believed the company had developed its own proprietary treatment for chronic nerve pain after a decade of hard work.

Plaintiff can identify no facts that would establish direct evidence of scienter as to any of the Defendants, and consequently attempts to establish scienter through a series of attenuated inferences. Plaintiff alleges that Nevro hired former BSC employees, and that some of those employees retained BSC material (a fact known only because Nevro discovered it and informed BSC). While these bare allegations establish nothing more than that some unspecified material may have been used in some unspecified way, Plaintiff asks this Court to infer that because the allegations relate to Nevro's "core operations," Nevro's senior officers knew about the alleged misuse. *See* ¶¶ 96–100. That does not come close to meeting the standard.

*First*, the logical inference Plaintiff asks the Court to draw does not follow from the facts presented. Nothing in Nevro's good-faith disclosure to BSC of the facts uncovered in the California Action create any legitimate inference that Nevro or its officers believed those facts undermined Nevro's claim to an ownership interest in the Senza system. *See In re Rigel*, 697 F.3d at 883–84. That Nevro became aware that former BSC employees had retained documents, and then alerted BSC to that fact, does not establish a strong inference that Defendants knew they had not developed proprietary technology that Nevro owned. *See In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1059 (9th Cir. 2014) (affirming dismissal in part because "even if Dell had notified NVIDIA of problems" there was "no basis to infer that NVIDIA also knew it would be liable"). To the contrary, all evidence then and now shows that Nevro has denied any belief that the material was ever used by Nevro, let alone used in some crucial way. *See* Ex. 17 (California Action, D.I. 203) at 13–15; Ex. 18 (Delaware Action, D.I. 11) at 15–20.

*Second*, federal courts have repeatedly rejected the specific types of inferences Plaintiff seeks to make here. For example, it is well-settled that mere "motive and opportunity to enhance [the] company's business prospects" cannot support a scienter pleading, and nothing in the

Amended Complaint shows that Nevro hired these employees out of anything other than "ordinary and appropriate corporate objectives." *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002);[7] *see also Eshelman*, 2008 WL 171059, at *6 ("allegations of circumstantial evidence that [defendant's] officers were in a position to take intellectual property from [competitor], or that they were successful in bringing a familiar product to market . . . fails to establish that the statements made about their own intellectual property were false when made.").

Similarly, Plaintiff asks the Court to infer that Nevro's senior officers must have known its statements were false because they implicate "the core operations of Nevro" so Messrs. Elghandour and Galligan "would have been aware of the true facts belying their false statements." ¶ 100. But courts routinely hold that "corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the fraud." *Metzler Inv. GMBH v. Corinthian Colls.*, 540 F.3d 1049, 1068 (9th Cir. 2008). The Amended Complaint contains no such additional allegations.

Plaintiff will no doubt claim these allegations should be viewed "holistically." That is of no moment: This is a case of "zero plus zero equals zero." *City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*, 442 F. App'x 672, 675 (3d Cir. 2011); *see In re Rigel*, 697 F.3d at 885.

### B.   Plaintiff Fails to Plead Loss Causation

To allege loss causation, "the complaint must allege that the practices that the plaintiff contends are fraudulent were ***revealed to the market*** and ***caused the resulting losses***." *Metzler Inv. GMBH*, 540 F.3d at 1063 (emphasis added); *see Dura Pharm.*, 544 U.S. at 341–46. It is well settled that the alleged corrective disclosures must present facts to the market that are new, not that were previously public. *Rok v. Identiv, Inc.*, No. 15-CV-5775-CRB, 2017 WL 35496, at *18 (N.D. Cal. Jan. 4, 2017), *aff'd sub nom. Cunningham v. Identiv, Inc.*, 716 F. App'x 663 (9th Cir. 2018) (citing *Meyer v. Greene*, 710 F.3d 1189, 1197–98 (11th Cir. 2013)) (internal quotations

---

[7]  This is especially true here where Plaintiff alleges that "Defendants" engaged in the long-running scheme, but Plaintiff never explains why Defendants Galligan and Elghandour, who joined Nevro in 2010 and 2012, had a motive to conceal a scheme that occurred years before they came on board by telling investors almost a decade later their technology was proprietary.

omitted). Republication of facts in another source cannot constitute a "corrective disclosure"; rather, a "corrective disclosure" must contain a new, hard fact revealing the falsity of the statement at issue. *See id.* Likewise, "a negative characterization of already-public information" is not a corrective disclosure. *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512–13 (2d Cir. 2010).[8]

Plaintiff alleges drops in Nevro's stock price following disclosures caused its losses at two points in time: April 27, 2018, when BSC filed the Delaware Action, which was subsequently reported in an analyst report; and July 2, 2018, when a Morgan Stanley analyst re-rated Nevro's outlook to "equal weight." These "revelations" allegedly caused Nevro's share price to "decline[] $1.46 per share, from a close of $90.82 per share on April 27, 2018 to a close of $89.36 per share on April 30, 2018," and then, to decline "another $6.62 per share . . . from a close of $79.85 per share on June 29, 2018 to a close of $73.23 per share on July 2, 2018." ¶ 66; *see* ¶ 65.[9] These allegations do not support loss causation because the substance of these "corrective disclosures" was public long before they were made.[10]

Specifically, on November 2, 2017, in the California Action, BSC publicly filed substantially the same factual allegations that it would eventually make in the Delaware suit—

---

[8] This is also consistent with the law of materiality, which holds that already public information cannot change the total mix of information. *See In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1115 (9th Cir. 1989) ("We conclude that in a fraud on the market case, the defendant's failure to disclose material information may be excused where that information has been made credibly available to the market by other sources.").

[9] Although the Amended Complaint identifies only these two alleged corrective disclosures, which were followed by a combined $8.18 drop in Nevro's share price, and although the Complaint abandons the original complaint's allegations that Nevro's May 7, 2018 earnings announcement and the Court's patent ruling were corrective disclosures, the Amended Complaint still alleges: "Defendants' fraud caused Nevro's share price to drastically decline over the course of just two months from a price of $90.82 per share on April 27, 2018 to a price of $73.23 on July 2, 2018[.]" ¶ 71. Plaintiff evidently seeks to bolster its claims by describing Nevro's *total* share price decline throughout the summer of 2018, without explaining how the Amended Complaint's remaining two corrective disclosures plausibly caused that entire loss.

[10] Relatedly, the bare, unproven allegations in Boston Scientific's complaint cannot support loss causation because they reveal no "truth." *See Sapssov v. Health Mgmt. Assocs., Inc.*, 22 F. Supp. 3d 1210, 1231 (M.D. Fla. 2014), *aff'd*, 608 F. App'x. 855 (11th Cir. 2015) (a complaint in another case is not a corrective disclosure because "[t]he filing of a civil complaint certainly does not establish that the defendant committed or is liable for the conduct alleged"); *cf. Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014) (holding that "the announcement of an investigation, without more, is insufficient to establish loss causation").

some five months before the first alleged "corrective disclosure." *Compare* ¶¶ 50–61 (Am. Compl. allegations citing the Delaware Action), *with* Exs. 3–4 (Motion to Amend and Redacted Counterclaims).[11] In its motion and redacted version of the proposed complaint, BSC clearly identified that (1) former employees were working for Nevro, (2) that these employees took materials when they left BSC, (3) the types of materials involved, (4) the types of materials the employees had access to while they were at BSC and what types of projects they worked on. All of the remaining details, found in the unredacted proposed counterclaims and attachments to filings related to the motion to amend, were subsequently made public by February 15, 2018— long before the alleged "corrective disclosures" on April 27 and July 2, 2018. *See* Exs. 12–13 (California Action, D.I. 247 at 2; 294 at 3); Exs. 6–11 (Unsealed Exhibits); Ex. 14 at Exs. G, J, K (same); *see also* Exs. 23–25 (other public California Action filings cited in Am. Compl.). Reasserting these same (already public) facts in a different forum in April cannot constitute a corrective disclosure. *See Sapssov*, 608 F. App'x at 863 (affirming dismissal for lack of loss causation where report—the alleged corrective disclosure—only summarized "facts from [civil litigation] that had existed in publicly accessible court dockets . . . before the [report] issued" and so "was easily obtainable, and the market was able to assimilate the information without [its] assistance").

The July 2018 Morgan Stanley report is not a corrective disclosure for another reason: it does not reveal facts (nor does Plaintiff allege it reveals any facts) beyond the prior filings in this Court or the Delaware Action. Where a report "only collected and opined on already public information, it does not constitute disclosure of 'the truth' as required for a corrective disclosure." *Bonanno v. Cellular Biomedicine Grp., Inc.*, No. 15-cv-01795-WHO, 2016 WL 4585753, at *5 (N.D. Cal. Sept. 2, 2016) (quotation omitted).

---

[11] Plaintiff also cites to Ex. 19 (California Action, D.I. 318-5), an email that was filed publicly on March 16, 2018 as an exhibit to a motion, and Exs. 20–22, items publicly filed in 2014 in *Boston Scientific Corp. v. Lee*, 1:13-cv-13156-DJC (D. Mass).

Here, neither of Plaintiff's alleged "corrective disclosures" identifies a single fact "publicly revealed for the first time," and as a result, Plaintiff fails to properly plead loss causation. *Rok*, 2017 WL 35496, at *18.

### C.    Plaintiff Fails to Plead a Claim Under Section 20(a) of the Exchange Act

To state a claim for control person liability under Section 20(a) of the Exchange Act Plaintiff must first demonstrate a primary violation of federal securities laws. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009), *as amended* (Feb. 10, 2009). Because Plaintiff "fails to adequately plead a primary violation of section 10(b)," its control person claims must be dismissed. *Id.*

## IV.    CONCLUSION

The Court should dismiss the Amended Complaint without leave to amend. Plaintiff is not entitled to raise a new theory in an amended complaint that could have been fully developed in its original contentions. *Utterkar v. Ebix, Inc.*, No. 14-CV-02250-LHK, 2015 WL 5027986, at *7 (N.D. Cal. Aug. 25, 2015) (denying leave to amend where plaintiff "provided no satisfactory explanation for his failure to fully develop his contentions originally"). Plaintiff has had ample opportunity to develop its theories, but the Amended Complaint's allegations remain deficient. The complaint cannot be saved by any amendment, and as such, dismissal with prejudice is proper. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

Dated: February 15, 2019                           Respectfully submitted,

                                                   LATHAM & WATKINS LLP


                                                   By:  /s/ Matthew Rawlinson
                                                        Matthew Rawlinson

                                                        Attorneys for Defendants
                                                        NEVRO CORP., RAMI ELGHANDOUR
                                                        and ANDREW GALLIGAN