LATHAM & WATKINS LLP
  Matthew Rawlinson (Bar No. 231890)
   *matt.rawlinson@lw.com*
140 Scott Drive
Menlo Park, California  94025
Telephone: +1.650.328.4600
Facsimile: +1.650.463.2600

LATHAM & WATKINS LLP
  Elizabeth Deeley (Bar No. 230798)
   *elizabeth.deeley@lw.com*
  Grant E. Strother (Bar No. 284612)
   *grant.strother@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California  94111
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

Attorneys for Defendants
NEVRO CORP., RAMI ELGHANDOUR and
ANDREW GALLIGAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NEVRO CORP., RAMI ELGHANDOUR and ANDREW GALLIGAN,<br><br>Defendants. | CASE NO. 3:18-CV-05181-VC<br><br>CLASS ACTION<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

**TABLE OF CONTENTS**

Page

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

I.      INTRODUCTION ........................................................................................................ 1

II.     ARGUMENT ............................................................................................................... 2

        A.      Plaintiff Has Not Pled an Actionable Misstatement ............................................. 2

                1.      The Only Statements at Issue Are Nonactionable Puffery ........................ 2

                2.      Plaintiff Cannot Plead a False or Misleading Statement .......................... 3

        B.      Plaintiff Fails to Plead Scienter................................................................................. 6

        C.      Plaintiff Fails to Plead Loss Causation .................................................................... 9

III.    CONCLUSION............................................................................................................ 10

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW

Case No. 3:18-cv-05181-VC
REPLY ISO DEFS.' MOT. TO DISMISS
PL.'S AM. COMPL.

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Abdo v. Fitzsimmons*,
No. 17-cv-00851-EDL, 2017 WL 6994539 (N.D. Cal. Nov. 3, 2017) ....................................2

*In re Amgen Inc. Sec. Litig.*,
No. CV 07–2536 PSG, 2014 WL 12585809 (C.D. Cal. Aug. 4, 2014) ..................................10

*Attia v. Google LLC*,
No. 17-cv-06037-BLF, 2018 WL 2971049 (N.D. Cal. Jun. 13, 2018) ....................................4

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) .................................................................................................8

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) .................................................................................................6

*Eshelman v. OrthoClear Holdings, Inc.*,
No. C 07-1429 JSW, 2008 WL 171059 (N.D. Cal. Jan. 18, 2008) ....................................4, 7

*In re Gentiva Sec. Litig.*,
932 F. Supp. 2d 352 (E.D.N.Y. 2013) ...................................................................................6

*Gompper v. VISX, Inc.*,
298 F.3d 893 (9th Cir. 2002) ..............................................................................................7, 8

*Hampton v. root9B Techs., Inc.*,
897 F.3d 1291 (10th Cir. 2018) .............................................................................................4

*In re Intrexon Corp. Sec. Litig.*,
No. 16-cv-02398-RS, 2017 WL 732952 (N.D. Cal. Feb. 24, 2017) ....................................2, 5

*Johns v. Bayer Corp.*,
No. 09CV1935 DMS (JMA), 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) .............................4

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ..............................................................................................6, 9

*In re Magma Design Automation, Inc. Sec. Litig.*,
No. 05-cv-2394-CRB (N.D. Cal.) ...........................................................................................5

*Mauss v. Nuvavsive, Inc.*,
No. 13cv2005 JM (JLB), 2015 WL 10857519 (S.D. Cal. Aug. 28, 2015) .............................6

*McIntire v. China MediaExpress Holdings, Inc.*,
927 F. Supp. 2d 105 (S.D.N.Y 2013) ...................................................................................5, 6

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW

ii

Case No. 3:18-cv-05181-VC
REPLY ISO DEFS.' MOT. TO DISMISS
PL.'S AM. COMPL.

*Mogensen v. Body Cent. Corp.*,
    15 F. Supp. 3d 1191 (M.D. Fla. 2014)......................................................................................2

*In re Moody's Corp. Sec. Litig.*,
    599 F. Supp. 2d 493 (S.D.N.Y.)..............................................................................................3

*In re Moody's Corp. Sec. Litig.*,
    612 F. Supp. 2d 397 (S.D.N.Y. 2009)......................................................................................3

*Nathanson v. Polycom, Inc.*,
    87 F. Supp. 3d 966 (N.D. Cal. 2015) ......................................................................................9

*Nathenson v. Zonagen Inc.*,
    267 F.3d 400 (5th Cir. 2001) ...................................................................................................9

*Norfolk Cnty. Retire. Sys. v. Comm. Health Sys., Inc.*,
    877 F.3d 687 (6th Cir. 2017) .................................................................................................10

*In re NVIDIA Corp. Sec. Litig.*,
    768 F.3d 1046 (9th Cir. 2014) .............................................................................................7, 8

*Padnes v. Scios Nova Inc.*,
    No. C 95-1693 MHP, 1996 WL 539711 (N.D. Cal. Sept. 18, 1996).....................................10

*In re Rigel Pharm., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012) ...............................................................................................7, 8

*In re Silicon Graphics Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) ...................................................................................................4

*South Ferry LP, No. 2 v. Killinger*,
    542 F.3d 776 (9th Cir. 2008) ...................................................................................................4

*In re Syncor Intern. Corp. Sec. Litig.*,
    239 F. App'x. 318 (2007) .........................................................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..................................................................................................................7

*Union Asset Mgmt. Holding AG v. SanDisk LLC*,
    No. 15-cv-01455-VC, 2017 WL 3097184 (N.D. Cal. June 22, 2017)......................................3

*In re Viropharma Inc. Sec. Litig.*,
    21 F. Supp. 3d 458 (E.D. Pa. 2014) ........................................................................................9

*In re Virtus Invest. Partners, Inc. Sec. Litig.*,
    195 F. Supp. 3d 528 (S.D.N.Y. 2016)......................................................................................2

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ...............................................................................................8, 9

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW

iii

**RULES**

Fed. R. Civ. P. 11 ..................................................................................................................4

Fed. R. Civ. P. 12(b)(6) .........................................................................................................4

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iv

Case No. 3:18-cv-05181-VC
REPLY ISO DEFS.' MOT. TO DISMISS
PL.'S AM. COMPL.

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff claims that Nevro, a company with more than 170 patents and the only FDA approved high-frequency spinal cord stimulation therapy, intentionally misled investors when it claimed it had "proprietary" technology. Plaintiff alleges that this fraud was "revealed" when Boston Scientific Corporation ("BSC") filed a trade secret lawsuit in Delaware. Not only does Plaintiff admit that its core securities fraud allegations consist of "facts" lifted from BSC's unproven allegations in the Delaware Action,[1] these same "facts" were publicized months earlier when BSC filed proposed amended counterclaims in this Court. Plaintiff's attempt to fabricate a securities fraud claim based on the ***republication*** of unproven IP allegations by Nevro's competitor is frivolous. The Court should dismiss the Amended Complaint with prejudice for the three reasons raised in Nevro's Motion.

***First***, the Amended Complaint does not allege any false statement. The challenged statements—that Nevro's technology was "proprietary" and "once in a generation"—qualify as puffery. Moreover, Plaintiff fails to identify a single piece of BSC's proprietary information incorporated into the myriad components of Nevro's Senza System, much less plead facts that Nevro does not have its own proprietary technology.

***Second***, Plaintiff has pled no facts that suggest anyone at Nevro made the challenged statements—that Nevro had developed and owned proprietary technology—with intent to mislead investors. It also makes no sense to suggest that Nevro attempted to conceal BSC's trade secret allegations from the public: BSC's allegations are public because it filed them in this Court early on in the class period.

***Third***, Plaintiff's theory of loss causation cannot stand. It is axiomatic that already-public information—allegations in the Delaware Action copied from the earlier California Action—cannot constitute the requisite "corrective disclosure" that Plaintiff must plead to show loss.

The Court should therefore dismiss the Amended Complaint with prejudice.

---

[1] Capitalized or abbreviated terms have the same meanings as in Nevro's opening brief (Dkt. 51, "Motion"). "Reply Ex." refers to the Declaration of Grant E. Strother filed herewith.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW

1

Case No. 3:18-cv-05181-VC
REPLY ISO DEFS.' MOT. TO DISMISS
PL.'S AM. COMPL.

## II.    ARGUMENT

### A.    Plaintiff Has Not Pled an Actionable Misstatement

#### 1.    The Only Statements at Issue Are Nonactionable Puffery

The challenged statements qualify as non-actionable puffery. The Opposition ignores case law rejecting securities fraud claims based on general statements about the proprietary nature of a company's technology—even where the plaintiff has pled that components of the technology were not proprietary or unique, something Plaintiff fails to do here. *See* Mot. at 7–10; *In re Intrexon Corp. Sec. Litig.*, No. 16-cv-02398-RS, 2017 WL 732952, at *3 (N.D. Cal. Feb. 24, 2017) ("even if Plaintiff's allegations sufficed to establish that one or two of Intrexon's technologies were undifferentiated" "that alone would not establish the falsity of the statements regarding Intrexon's suite of technologies").[2] Rather than arguing that Nevro's statements are not generic, Plaintiff argues that because Senza is "Nevro's **sole product**," Nevro's statements are material *per se*, and therefore not puffery. Opp. at 8.[3] But the key question is whether the statements at issue—such as the claim that a product or strategy was "proprietary"—were "too general to cause a reasonable investor to rely upon them." *In re Virtus Invest. Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d 528, 538 (S.D.N.Y. 2016). Accordingly, courts have not hesitated to apply the puffery rule when defendants make "general characterizations" about their core technology as "proprietary" because it is too "vague." *In re Intrexon Corp.*, 2017 WL 732952, at *3; *see also Abdo v. Fitzsimmons*, No. 17-cv-00851-EDL, 2017 WL 6994539, at *11 (N.D. Cal. Nov. 3, 2017) (defendant's characterization of its **only** technology as a "game-changer" setting it apart from the competition was puffery).[4]

---

[2] Plaintiff attempts to distinguish *Intrexon* because the statements at issue "related to Intrexon's entire suite of technologies and made no specific representations about the provenance or value of any specific technology." Opp. at 9 n.7 (quotes and brackets omitted). But the defendant in *Intrexon* described its entire "suite" of technologies as "proprietary," and, in any event, Nevro's Senza System, like Intrexon's technology suite, is comprised of a variety of underlying technologies combined into one product. Mot. at 9.

[3] All emphasis has been supplied unless otherwise indicated.

[4] Plaintiff cites *Mogensen v. Body Cent. Corp.*, 15 F. Supp. 3d 1191 (M.D. Fla. 2014), but that court held that statements about the "strength" of the defendant's stores, and its "strategy [that] enable[d them] to respond rapidly to changing trends" were puffery. *Id.* at 1212–13.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

2

Case No. 3:18-cv-05181-VC
REPLY ISO DEFS.' MOT. TO DISMISS
PL.'S AM. COMPL.

Plaintiff's cited cases do nothing to undermine this conclusion, and involve statements far less generic than those here. For example, in *In re Moody's Corp. Sec. Litig.*, the court concluded that Moody's characterization of its independence was not mere puffery where its SEC filings "listed verifiable actions it was taking to ensure its independence." 599 F. Supp. 2d 493, 509 (S.D.N.Y.), *opinion corrected on denial of reconsideration*, 612 F. Supp. 2d 397 (S.D.N.Y. 2009). Plaintiff neither challenges nor cites any similar "verifiable" facts in Nevro's disclosures.[5]

### 2.  Plaintiff Cannot Plead a False or Misleading Statement

Plaintiff does not plead any false statement with requisite particularity because it alleges no facts showing that Nevro incorporated any BSC technology into any specific product feature. *See* Mot. at 7–10. Plaintiff does not identify what specific BSC technology Nevro allegedly used, let alone how, to what extent, or in which Senza components it was allegedly used. And whatever the status of BSC's trade secret claims, Plaintiff fails to allege any facts that suggest Nevro does not possess important proprietary technology of its own. Plaintiff effectively concedes most of this in their response. *See* Opp. at 5–7.

Instead, Plaintiff asserts that Nevro should have made some sort of vague statement that it "relied on" BSC materials in "developing" Senza, and that its failure to do so rendered any other statement about its own technology misleading. Opp. at 5–6. This response fails for three reasons.

*First*, Plaintiff's proposed disclosure should be seen for what it is—an admission that it cannot identify any facts that Nevro used any identifiable BSC material in any actual Senza features that would justify a more concrete disclosure.

*Second*, Plaintiff lifted the majority of its allegations about how Nevro "relied" on BSC technology from allegations BSC—Nevro's competitor—made on "information and belief" in the Delaware Action. "Plaintiffs may not simply regurgitate other parties' pleadings to establish" their

---

[5] Plaintiff's puffery cases are inapposite for essentially the same reason: all of them involved much more specific statements than Nevro's general claim that it developed proprietary technology. *See* Opp. at 14 (string citing cases). And, in *Union Asset Mgmt. Holding AG v. SanDisk LLC*, No. 15-cv-01455-VC, 2017 WL 3097184, at *1 (N.D. Cal. June 22, 2017), unlike here, plaintiffs alleged a specific set of circumstances—a corporate officer's response to analyst questions about specific negative events—that transformed language that otherwise would have been puffery into pointed misstatements. *See id.* Plaintiff alleges no similar specific context here.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

3

Case No. 3:18-cv-05181-VC
REPLY ISO DEFS.' MOT. TO DISMISS
PL.'S AM. COMPL.

claims—particularly those based only on information and belief—Rules 12(b)(6) and 11 require more. *Attia v. Google LLC*, No. 17-cv-06037-BLF, 2018 WL 2971049, at *15 (N.D. Cal. Jun. 13, 2018); *cf. Johns v. Bayer Corp.*, No. 09CV1935 DMS (JMA), 2010 WL 476688, at *3 (S.D. Cal. Feb. 9, 2010) (allegations "taken directly" from a third party's allegations did not satisfy Rule 11).[6]

*Third*, Plaintiff's remaining factual allegations taken from documents filed in the California and Delaware actions do not plead specific facts that, if true, would establish that Nevro "relied on" anything improper in developing Senza. Plaintiff alleges that because some former BSC employees worked for Nevro and retained documents when they left BSC, the Court should assume (without more facts) that they actually used—and required—BSC proprietary information for Nevro's product. But those sorts of conclusory leaps untethered to specific facts are insufficient, and Plaintiff alleges no facts to bridge the gap. *See Eshelman v. OrthoClear Holdings, Inc.*, No. C 07-1429 JSW, 2008 WL 171059, at *5 (N.D. Cal. Jan. 18, 2008) (third party's infringement allegation and defendant's settlement does not show actual knowledge of infringement rendering representations to the contrary misleading). Plaintiff must do more than plead facts that, even if assumed to be true, hint at a "mere possibility" that Nevro acted improperly. *Cf. Hampton v. root9B Techs., Inc.*, 897 F.3d 1291, 1296–1301 (10th Cir. 2018) (describing hardware as "proprietary" was not "misleading" where plaintiff only alleged a "mere possibility" that defendant's CFO's description of certain hardware as nonproprietary referred to the same technology). Plaintiff must plead specific facts that "corroborate [its] allegations" instead of simply "set[ting] forth a belief that certain unspecified sources will reveal, after appropriate discovery, facts that will validate [its] claim," as Plaintiff does here. *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999), *abrogated on other grounds as stated in South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008); *see* Opp. at 7 n.4 ("Discovery . . . will further reveal which documents were used in the development of Senza, and in what capacity.").

---

[6] Plaintiff attempts to distinguish *Attia* by claiming that its allegations "are supported by documentary evidence," but that is not true with respect to its allegations that Nevro actually incorporated BSC technology into Senza. Opp. at 7 n.3. Plaintiff does not argue that it performed *any* personal investigation into those allegations (which is particularly egregious given that Nevro's hundred-plus patents are public); the Court should disregard them. *See Attia*, 2018 WL 2971049, at *15.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW

4

Case No. 3:18-cv-05181-VC
REPLY ISO DEFS.' MOT. TO DISMISS
PL.'S AM. COMPL.

Plaintiff's only attempt to bridge this gap is to cite three documents allegedly retained by former BSC employees when they departed. It generally asserts that these three documents relate to the development of high-frequency spinal cord stimulation systems, like the Senza System. *See* Opp. at 6–7. But Plaintiff does not allege any specific facts that would establish Nevro ever used any of these documents in any material way, that any portion of the protocols were useful (much less necessary) to the development of Senza, or that any technology embodied in these documents (which Plaintiff does not describe with any specificity) is also embedded in the Senza System. At most, these documents suggest BSC and Nevro worked on some of the same problems—but nothing more than that. Nothing in them indicates that Nevro did not have proprietary technology.

Far from supporting Plaintiff's claims, the specifics of the documents cited by Plaintiff undermine them. For example, Plaintiff cites BSC's "Spinal Cord Stimulator Clinician's Programming System, Module Specification." *See id.* It claims this document "detailed the specifications BSC used to program the Precision system to emit electrical stimulation at high frequencies." *Id.* But the Amended Complaint recognizes that Precision's ability to do this was simply a potentiality; BSC never actually made its Precision system commercially available at the same high frequencies as the Senza System. *See* ¶¶ 3, 23, 28, 33 n.3; *see also* Ex. 1 at 4, 7–10, 65; Ex. 2. More fundamentally, even though both the Module Specification and the hundred-plus patents comprising the Senza System are public, Plaintiff does not point to a single aspect of the Senza System (from those patents or any other source) that it alleges Nevro copied from the Module Specification. Plaintiff's inability to connect any of this material to Nevro's actual technology underscores its failure to plead any factual basis for the claim that Nevro's statements were false or misleading—much less intentionally so. *See Intrexon*, 2017 WL 732952, at *3.[7]

---

[7] Plaintiff relies on *In re Magma Design Automation, Inc. Sec. Litig.*, No. 05-cv-2394-CRB (N.D. Cal.), but there, defendant's founder admitted in a "sworn declaration" that defendant "knowingly commercialized intellectual property that was conceived of and designed by him while he was employed by another company," and "specified" "exactly which [of his] inventions" "later became the basis for" defendant's patents, which the plaintiff identified by number. Uslaner Decl. (Dkt. 58) Ex. A. Plaintiff alleges no facts approaching this level of connection between BSC's and Nevro's technologies. Plaintiff also mischaracterizes *Magma* as involving just the defendant's claim about its "technology advantages," when, in fact, the plaintiff alleged that defendant's highly detailed financial reporting and description of the merits of the underlying trade secrets litigation were false. *See id.* at 3; Reply Ex. 26 ¶¶ 65–81; Opp. at 6. This case is also not like *McIntire v.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

5

Case No. 3:18-cv-05181-VC
REPLY ISO DEFS.' MOT. TO DISMISS
PL.'S AM. COMPL.

*Fourth*, tacitly admitting that it cannot plead that Nevro actually relied on any BSC materials, Plaintiff argues that Nevro should have disclosed that employees retained BSC documents, regardless of whether or not they were essential to—or even used in—developing the Senza System. *See* Opp. at 5–6. But this has nothing to do with whether Nevro's claim of having "proprietary" technology is misleading: a "statement will not mislead even if it is incomplete or does not include all relevant facts." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Rather, the statement must "affirmatively create an impression of a state of affairs that *differs in a material way* from the one that *actually exists*." *Id*. None of Nevro's statements do that: Nevro disclosed that it hired former BSC employees and that their involvement with Senza could expose Nevro to trade secret litigation. ¶ 92; Ex. 1 at 43. Nevro said it would take appropriate action to address any trade secret issues that arose. As Plaintiff admits in its pleading, Nevro did just that: It learned that its employees had retained BSC documents and promptly returned them to BSC. *See* ¶ 99; Ex. 9 at 10. Plaintiff has not alleged that the "state of affairs" was any different than Nevro described it, and so Plaintiff cannot plead a misrepresentation or omission.[8]

### B.    Plaintiff Fails to Plead Scienter

To plausibly allege scienter, Plaintiff must plead with particularity facts that give rise to a strong inference that Nevro intended to mislead the public in a material way about the statements made. Plaintiff's allegations are insufficient for two core reasons.

*First*, Plaintiff does not allege specific facts suggesting that any speaker did not believe Nevro had developed and owned proprietary technology. Plaintiff essentially concedes this, and

---

*China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 125 (S.D.N.Y 2013) where plaintiff claimed that defendant's SEC filings were false by pointing to specific reports that the defendant had filed with a foreign regulator that contradicted the SEC filings. *See id.* at 124. Plaintiff here points to no inconsistent statements by Defendants.

[8] Unlike here, every case Plaintiff cites involved *particularized allegations* demonstrating that the state of affairs was materially different from how defendants characterized it. *Khoja v. Orexigen Therapeutics, Inc.*, involved specific allegations that (1) the FDA told defendant its study results were unreliable, and (2) a key clinical study terminated, even though defendant touted those results and that study. *See* 899 F.3d 988, 1010–13 (9th Cir. 2018). Plaintiffs in *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 367–68 (E.D.N.Y. 2013), *In re Syncor Intern. Corp. Sec. Litig.*, 239 F. App'x. 318, 320–21 (2007), and *Mauss v. Nuvavsive, Inc.*, No. 13cv2005 JM (JLB), 2015 WL 10857519, at *10 (S.D. Cal. Aug. 28, 2015), alleged specific facts demonstrating that defendants profited from illegal activity, even though their representations indicated their earnings were from legitimate sources.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

6

Case No. 3:18-cv-05181-VC
REPLY ISO DEFS.' MOT. TO DISMISS
PL.'S AM. COMPL.

that should end the matter. *See* Mot. at 10–12; *Gompper v. VISX, Inc.*, 298 F.3d 893, 896, n.1 (9th Cir. 2002) (affirming dismissal with prejudice because no strong inference of scienter where complaint "based in large part" on allegations from defendant's patent litigation with competitor also provided unfavorable inference that defendants "fervently believed in the viability of the[ir] patent portfolio, and litigated its defense with ferocity"); *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012) (affirming dismissal for failure to plead scienter based on what executives believed); *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1059–60, 1062 (9th Cir. 2014) (allegations by competitors and legal adversaries are untrustworthy sources on which to base "an inference of scienter."); *Eshelman*, 2008 WL 171059, at *6–7.[9]

*Second*, Plaintiff claims BSC's trade secret allegations in the Delaware Action revealed a "fraud." Opp. at 10–11. But Plaintiff does not explain how any speaker at Nevro could have acted with intent to conceal those allegations at the time they called their technology "proprietary" given that the allegations were already public in this Court during much of the Class Period. Plaintiff ignores this entirely. But there is no plausible theory, let alone a "compelling" inference of scienter that is consistent with both the earlier-filed and already public trade secret allegations in the California Action and Plaintiff's theory of how the fraud was "revealed." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007) ("A complaint will survive" "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference"); *cf. also In re Rigel*, 697 F.3d at 884 ("[I]f Defendants were intent on misleading investors" "it does not make sense that" they "disclose[d] in their initial, allegedly fraudulent, reports" what had already been publicly disclosed).

Instead, Plaintiff attempts to use indirect inferences to establish that the speakers were aware of something entirely different: that some Nevro employees retained documents when they left BSC. In other words, Plaintiff asks the Court to infer that Nevro's executives intentionally lied

---

[9] Plaintiff asserts that *NVIDIA* is "inapposite because it concerns allegations by confidential witnesses," but that bolsters Nevro's position: even where confidential witnesses augmented the claims against NVIDIA, it still was not enough for the Ninth Circuit to infer scienter. 768 F.3d at 1056–57. Plaintiff also argues *Eshelman* does not apply because the Delaware Action is based in part on some documentary evidence. Opp. at 12 n.11. But, as discussed above, the only allegations of consequence in the Delaware Action—allegations that Nevro actually used BSC trade secrets and how—are unproven and based on BSC's own "information and belief."

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

7

Case No. 3:18-cv-05181-VC
REPLY ISO DEFS.' MOT. TO DISMISS
PL.'S AM. COMPL.

to investors when Nevro claimed the company had proprietary technology, because previously—in allegations that were already public—Nevro's attorneys discovered in the course of patent litigation between the two competitors that some employees had retained BSC documents. There is no significant nexus between the facts Plaintiff alleges and the inference it asks the Court to draw from them. *Gompper*, 298 F.3d at 895–96 (even where defendants "unquestionably aware" of "claim[s] against one of their core patents," complaint "fail[ed] to demonstrate the link between awareness of the claim and knowledge that the patents were therefore invalid.").

Even if Plaintiff's logic held up, it does not even plead that Nevro's executives knew that some Nevro employees had retained BSC documents, let alone that they knew what was in those documents. Apparently recognizing the flawed logic, Plaintiff asks the Court to assume Nevro's officers' knowledge under a "core operations" theory.[10] *See* Opp. at 11–12. But a "core operations" inference requires more than showing the facts at issue related to a "flagship product," which is all Plaintiff does here. Rather, Plaintiff must allege "unusual circumstances," that would make it "patently obvious" or "absurd" for Nevro executives to not know their employees retained BSC documents that invalidated ten years of work developing proprietary technology built on over 100 patents.[11] *See NVIDIA*, 768 F.3d at 1063–65 (rejecting core operations inference despite "flagship product's" problem and noting doctrine required "unusual circumstances"); *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000–01 (9th Cir. 2009). Here, Plaintiff provides no reason why it would be "absurd" for Nevro's executives to be unaware of what Nevro's California Action attorneys discovered—certain employees retained BSC documents. This case is more akin to *Zucco*, where the alleged "misrepresentations are largely definitional"—here the

---

[10] Plaintiff argues that Nevro's motive for lying was "the fact that Senza was Nevro's sole product and source of revenue." Opp. at 12. But Plaintiff cannot show a strong inference because it is "equally if not more plausible" that Nevro's disclosures in the face of threatened or pending litigation indicated that Nevro "and its officers fervently believed in the viability of [Nevro's] patent portfolio." *Gompper*, 298 F.3d at 896–97; *see also In re Rigel Pharm*, 697 F.3d at 884.

[11] Plaintiff's opposition primarily relies on *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 989 (9th Cir. 2008). But the Ninth Circuit made clear that *Berson* was an extreme case: The core operations theory applied, not because defendant was a one-product-company, but because the executives "must have known" about stop-work orders that had a "devastating effect" on the company—the orders stopped about $15 million worth of work on the company's largest contract and forced reassignment of about 75 workers. *Id*. at 987–89 & n.5.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW

8

Case No. 3:18-cv-05181-VC
REPLY ISO DEFS.' MOT. TO DISMISS
PL.'S AM. COMPL.

meaning of *proprietary* or *developed*—such that "the falsity of the original representations would not be immediately obvious to corporate management." 552 F.3d at 1000–01.[12]

### C.   Plaintiff Fails to Plead Loss Causation

Regardless of whether Plaintiff has pled an intentional misrepresentation, Plaintiff cannot plead loss causation because it does not allege any actionable corrective disclosure. Mot. at 12–15. To the extent the Delaware Action constitutes a corrective disclosure at all—which Nevro denies—Plaintiff's Opposition does not dispute that ***every single significant allegation*** in the Amended Complaint about Nevro's purported trade secret misappropriation was publicly disclosed in the California Action, well before BSC filed the Delaware Action. Nor does the Opposition point to any new factual information revealed by any of the analyst reports Plaintiff claims were corrective disclosures.[13] The Delaware Action and the analyst reports described in the Amended Complaint are therefore not the type of corrective disclosures necessary to support a loss causation pleading. Mot. at 12–14. Both arguments Plaintiff raises in response fail.[14]

*First*, Plaintiff claims the Delaware Action contained "new facts" "regarding the theft of trade secrets regarding specific patents made public for the first time," and rattles off a series of BSC patent numbers addressed in the original Delaware Action complaint. Opp. at 12 & n.13. But the Amended Complaint does not mention any of these patent numbers or explain how they are essential to the Senza System. *See Nathanson v. Polycom, Inc.*, 87 F. Supp. 3d 966, 985 (N.D. Cal. 2015) (declining to address new allegations argued in opposition because "Plaintiff ha[d] not

---

[12] Plaintiff mischaracterizes two cases that are neither precedential nor persuasive: *In re Viropharma Inc. Sec. Litig.* featured allegations supported by "several confidential witnesses" and "unusual" stock sales netting defendants $8 million—not just allegations the company was a one-product-business. 21 F. Supp. 3d 458, 473–74 (E.D. Pa. 2014). And in *Nathenson v. Zonagen Inc.*, the court "barely" found scienter against a CEO under a "number of special circumstances" including specific quotes from the CEO that a patent covered his company's drug, despite evidence the patent did not cover the drug. 267 F.3d 400, 424–25 (5th Cir. 2001).

[13] This is unlike the cases the Opposition cites. *See* Opp. at 20 (citing cases); Mot. at 14.

[14] *Khoja* does not support Plaintiff's argument that filings *in this Court* in the California Action are improper for judicial notice. The portion of *Khoja* that Plaintiff cites involved a request for notice of a fact from a conference call transcript that also contained contradictory facts. *See* 899 F.3d at 1003. There was thus a reasonable dispute as to the fact at issue. Here, Plaintiffs do not—and cannot—dispute that the documents of which Nevro seeks judicial notice and their contents were publicly available. Those filings, like the Exhibits to the Reply Declaration, are thus appropriate subjects of judicial notice. *See* Dkt. 52.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

9

Case No. 3:18-cv-05181-VC
REPLY ISO DEFS.' MOT. TO DISMISS
PL.'S AM. COMPL.

pleaded these allegations in his Complaint."). And the Delaware Action patent infringement claims are not the same as the trade secret allegations that ground Plaintiff's securities fraud claim.[15]

*Second*, Plaintiff's assertion that the California Action filings are a "hodge-podge," and so did not tell a coherent story to the market, is not only irrelevant,[16] but false. Opp. at 14; *see* Mot. at 12–14. As discussed, the Delaware Action did not reveal any new factual information: Every specific allegation about trade secret misappropriation is also in one single California Action filing from weeks earlier—BSC's proposed amended counterclaims. Mot. at 14.[17]

## III.   CONCLUSION

Plaintiff had the benefit of the Court's guidance at the December 20, 2018 hearing and, yet, has failed to state a claim.[18] Dismissal with prejudice is proper. *See* Mot. at 15.

---

[15] Plaintiff also fails to disclose that BSC amended the Delaware Action complaint to withdraw its infringement claims as to all of the patents Plaintiff references in its Opposition except for one: the "'690 patent." *Compare* Reply Ex. 27 (Delaware Action First Am. Compl.) ¶ 2 *with* Ex. 5 ¶ 2. BSC does not even allege that the '690 patent relates to any Nevro technology that Plaintiff claims differentiates Senza from its competition. *See generally* Ex. 15 ¶¶ 47–59.

[16] *In re Amgen Inc. Sec. Litig.*, No. CV 07–2536 PSG (PLAx), 2014 WL 12585809, at *15 (C.D. Cal. Aug. 4, 2014) is inapposite. In *Amgen*, the defendant raised a "truth-on-the-market" defense, arguing that the market was able to piece together from a series of disparate, partial corrective disclosures the same "truth" that the main corrective disclosure at issue allegedly revealed. *See id.* While the court rejected that defense, it found "merit" in the separate, threshold issue that Nevro raises here, *i.e.*, whether, as alleged, the Delaware Action was the first-in-time corrective disclosure and thus supports loss causation. *Id.* at *14. The *Amgen* Court found no support in the record for that proposition; no earlier disclosure "revealed any facts germane" to the alleged misrepresentations. *Id. Amgen*'s reasoning, however, requires finding for Nevro here because the same "facts" revealed in the Delaware Action were actually revealed earlier in the California Action. *See id.* at *14–15 (also declining to follow as "out-of-district" *Padnes v. Scios Nova Inc.*, No. C 95-1693 MHP, 1996 WL 539711, at *9 (N.D. Cal. Sept. 18, 1996) ("broad assertion of the absence of information which is contrary to known facts" is insufficient "to resist a motion to dismiss and plunge the parties into lengthy and costly discovery"; to do so "abuses the use of the 'fraud-on-the-market' theory")).

[17] *Norfolk Cnty. Retire. Sys. v. Comm. Health Sys., Inc.*, 877 F.3d 687 (6th Cir. 2017) undermines Plaintiff's argument: The *Norfolk* court found allegations in another complaint generally do not reveal "truth" required for "corrective disclosures" because such allegations "are made in seeking money damages or other relief" and thus "tend to be less credible." *Id.* at 696. But, such allegations, coupled with specific evidence, *e.g.*, "a defendant's own admissions of wrongdoing," can constitute corrective disclosures. *Id.* Under that reasoning, the California Action filings, which revealed the documentary evidence on which Plaintiff relies, are the plausible corrective disclosures, not the additional, unsupported Delaware Action patent allegations.

[18] Plaintiff pleads no primary securities fraud claim so its Section 20(a) claim fails. *See* Mot. at 15.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW                                         10

Case No. 3:18-cv-05181-VC
REPLY ISO DEFS.' MOT. TO DISMISS
PL.'S AM. COMPL.

Dated: April 5, 2019

Respectfully submitted,

LATHAM & WATKINS LLP

By:  /s/ Matthew Rawlinson
      Matthew Rawlinson

      Attorneys for Defendants
      NEVRO CORP., RAMI ELGHANDOUR
      and ANDREW GALLIGAN

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

11

Case No. 3:18-cv-05181-VC
REPLY ISO DEFS.' MOT. TO DISMISS
PL.'S AM. COMPL.